Filed 5/11/15  In re N.F. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re N.F., a Person Coming Under the Juvenile Court Law. | B256038 (Los Angeles County Super. Ct. No. DK00221) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Robert S. Draper, Judge, Marilyn M. Mordetsky and Sherri S. Sobel, Juvenile Court Referees. Affirmed.

Merrill Lee Toole, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

In this appeal, we affirm the juvenile court's jurisdictional and dispositional orders. Mother, who had a long history of drug abuse and fled with her daughter prior to the detention hearing, fails to show the court erred in taking jurisdiction over her six-year-old daughter N.F. or in requiring her to test negative for controlled substances prior to visiting N.F.

## FACTS AND PROCEDURE

C.M. (mother), who has a felony conviction for grand theft auto, previously had been involved with child protective services in New York and Texas. On July 31, 2013, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition, which, as later sustained, alleged that mother and father have a history of illicit drug use and currently abuse heroin and marijuana rendering them unable to care for N.F. Both were under the influence of illicit drugs while N.F. was in their care.

### 1. Detention

Prior to the detention hearing, a social worker spoke with mother and father. Father was on probation for using heroin. He had completed nine months of a rehabilitation program, and he regularly attended Alcoholics Anonymous meetings. Father admitted smoking heroin and marijuana during the prior month. Father also admitted that he had been arrested for domestic violence, and that mother previously had obtained a restraining order against him.

Mother reported that she and father were living with a friend because they had been evicted from their apartment. She acknowledged that child protective services in Dallas, Texas was investigating them.

Mother and father were personally given notice that the detention hearing would occur on July 26, 2013, and father was also notified telephonically. Neither mother nor father appeared at the detention hearing. Additionally, N.F. was not at the detention hearing, and the court later learned she was in Texas with mother. The court (Judge Robert Draper) found notice proper.

Paternal grandmother appeared at the detention hearing, and reported that mother and father had a history of avoiding child protective services. Grandmother indicated

2

they may have left the state at which point the court (Judge Draper) stated that it was likely an arrest warrant and protective custody warrant would issue.

The court found a prima facie case for detaining N.F. Even though mother and father did not appear at the hearing, the court released her to her parents' care. DCFS was authorized to test mother and father for controlled substances on demand.

The next hearing was presided over by a referee. The court (Referee Mordetzky) ordered DCFS to seek a removal order. On August 15, 2013, the referee signed a protective custody warrant request. On the same day, the referee issued warrants for mother's and father's arrests.

Four days later, on August 19, 2013, Judge Draper ordered that the protective custody warrant for N.F. and the arrest warrants for mother and father remain in full force and effect.

Eventually, father was located. On September 5, 2013, Judge Draper reaffirmed that the protective custody warrant and mother's arrest warrant remain in full force and effect.

Mother was located following her arrest in Texas on January 1, 2014. She was arrested for among other things five counts of possession of a controlled substance and kidnapping. The kidnapping charge was based on the California warrant in this case. In February 2014, the warrants for N.F. and mother were recalled. Also in February 2014, N.F. was placed with her paternal grandmother (against mother's wishes).

Mother appeared in juvenile court March 14, 2014, and requested visitation and referrals for drug testing. The court ordered DCFS to assist mother with a drug program including random testing. Mother stated: "I want to be tested to prove that these allegations are false." The court ordered monitored visitation for mother after two negative tests for controlled substances. Mother did not argue that the arrest warrant or protective custody warrant was invalid.

A jurisdictional hearing was held April 11, 2014. At that hearing, Marco G. testified that mother told Marco G. father used heroin. Marco G. dated mother and met N.F. when both mother and N.F. lived in his home. He saw mother under the influence

3

of drugs six or seven times. Mother slept most of the day and did not take care of N.F. Mother did not feed N.F. or clean her clothing. One morning at approximately 3:00 or 4:00 a.m., mother met someone in a car, and Marco G. suspected that it was a drug dealer. When mother brought father to the house people regularly showed up early in the morning, and Marco G. believed they were "dropp[ing] off" drugs. One time Marco G. smelled marijuana when mother was home with N.F.

Mother testified and denied living with Marco G. Mother testified she was investigated by child protective services in Texas because of drug allegations. Mother testified that she tested negative for controlled substances, and as a result, the investigation was closed. Mother acknowledged smoking marijuana but denied smoking it recreationally or in N.F.'s presence. Mother testified she was willing to test on demand for controlled substances. Mother testified she homeschooled N.F.

Mother's adult daughter testified that Marco G. contacted her. He asked about mother. He said that "he had got in contact with the right people and that he would make my mom and N[.F.] disappear, too." Marco G. said that he contacted the paternal grandparents, and she would never see her sister again.

The court found Marco G. somewhat credible and mother not credible. The court found: "I believe the mother's testimony is zero credible. I don't believe a word she says, and I find her a little bit terrifying . . . . [¶] . . . Mother is, without any question, the most seriously in denial person. I haven't seen anybody close to this kind of denial." The court sustained the petition. The court ordered both mother and father to attend drug treatment programs including random and on-demand tests for controlled substances. Visitation was ordered monitored two times per week for two hours after mother had two tests showing negative results for controlled substances.

## DISCUSSION

Mother's principal argument is that the protective custody warrant issued for N.F. and the arrest warrant for her were invalid. As summarized above, the warrants were issued by a referee and ordered four days later by the judge to remain in full force and effect. Mother also argues that DCFS failed to provide reasonable services and that the

4

juvenile court abused its discretion in requiring mother to test negative for controlled substances prior to visiting with N.F.  We discuss each argument in turn.

## 1. *Warrants*

### a. *Protective Custody Warrant*

Citing Welfare and Institutions Code section 249 and California Rules of Court, rule 5.540(b)(1) mother argues that the protective custody warrant was invalid.  Section 249 provides:  "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court."  Rule 5.540(b)(1) provides:  "The following orders made by a referee do not become effective unless expressly approved by a juvenile court judge within two court days:  [¶]  (1) Any order removing a child from the physical custody of the person legally entitled to custody . . . ."

Mother identifies no violation of Welfare and Institutions Code section 249.  Section 249 does not specify that a referee's order becomes void if it is not countersigned by a judge, but instead the statute simply delays the effective date of the order until approved by a judge.  (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 358, 359.)  Here, when Judge Draper reaffirmed the order four days after it issued, it became effective under section 249.  And, mother was arrested long after that.

The court substantially complied with California Rules of Court, rule 5.540 when Judge Draper ordered the protective custody warrant to be in full force and effect within four days of its issuance.  Although rule 5.540 requires two days and not four days, the two-day rule does not have jurisdictional consequences.  (*In re Jesse W., supra*, 93 Cal.App.4th at p. 358.)  In other words, the order remains valid even if it is not approved in the two-day time period.  (See *In re Robert D.* (1979) 95 Cal.App.3d 767, 773 [removal order signed by judge three days after it issued was not void].)  Instead, the violation of the two-day rule delayed the effectiveness of the referee's order until

approved by the judge.[1]  (*Ibid*.)  In short, the protective custody order was valid once approved by Judge Draper, and mother demonstrates no error.

*b.  Arrest Warrant*

Next mother argues that the referee was not authorized to issue a warrant for her arrest, and as a result, the jurisdictional and dispositional orders must be reversed.  We disagree.  Four days after the referee issued the arrest warrant and long before mother was arrested, the judge ordered the arrest warrant remain in full force and effect. Therefore, any assumed error in the initial order by the referee was remedied by the judge's later order.

Mother also argues the arrest warrant was not appropriate because she was not in contempt of any court order when she left the state with N.F.  Contrary to mother's argument, contempt was not a prerequisite to the issuance of the arrest warrant.  Welfare and Institutions Code section 339 permits an arrest warrant when a parent fails to appear at a hearing concerning a dependency petition.  Section 339 provides:  "In case such citation cannot be served, or the person served fails to obey it, or in any case in which it appears to the court that the citation will probably be ineffective, a warrant of arrest may issue on the order of the court either against the parent, or guardian, or the person having the custody of the minor, or with whom the minor is living."  "Upon the filing of a dependency petition, the juvenile court has the authority to issue a citation directing the parent to appear and bring the child to court [citations] and it may order an arrest warrant for the parent if the citation cannot be served and a protective custody warrant for the child if it finds the child's home environment may endanger the child."  (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 250 (*Claudia S.*).)

Here, the court followed the requirements of Welfare and Institutions Code section 339 and *Claudia S.* when it issued the arrest warrant after mother and her children failed

---

[1]  Mother did not raise this issue in the juvenile court and arguably forfeited it. However, because mother was not represented by counsel at the time the warrant issued, we have considered mother's argument on the merits.

6

to appear at the detention hearing. In *Claudia S.* a mother took her children to Mexico knowing that a social services agency intended to file petitions on behalf of her children. (*Claudia S., supra*, 131 Cal.App.4th at p. 241.) The juvenile court nevertheless had continued with the proceedings, finding jurisdiction and holding numerous hearings without locating the parents. The appellate court held that instead of holding the jurisdictional hearing and subsequent hearings, the juvenile court should have issued citations for the parents and warrants for the parents and the children. (*Id*. at p. 250.) That is exactly what happened in this case. The juvenile court issued warrants and waited until N.F., mother, and father were located to conduct the jurisdictional hearing.

Moreover, it is undisputed that mother received actual notice of the detention hearing. Even if we assume that notice was insufficient, mother fails to show that reversal of the jurisdictional and dispositional orders is warranted. "Unless there is no attempt to serve notice on a parent, in which case the error has been held to be reversible per se [citations], errors in notice do not automatically require reversal but are subject to the harmless beyond a reasonable doubt standard of prejudice." (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.) The arrest warrant could not prejudice mother with repect to the jurisdictional order because the court concluded jurisdiction was appropriate only after finding mother was not credible and was a "bit terrifying." Therefore the reversal of the jurisdictional order is not warranted.

## 2. *Reasonable Efforts*

Mother argues that DCFS did not engage in reasonable efforts to prevent removal because it did not provide mother with drug tests and thereby prevented her from challenging the allegations in the petition. Mother's argument is not persuasive. The delay in mother's drug testing was caused by her move to Texas, not DCFS's conduct.

At the detention hearing held July 31, 2013, mother did not appear. The court ordered DCFS to test mother for controlled substances but DCFS could not do so because mother had left the state. Mother did not appear in court until March 14, 2014. Had mother appeared in July 2013, her drug testing would have started sooner. Based on the record in this case, mother fails to show that DCFS's efforts were not reasonable.

### 3. *Visitation*

Finally, the trial court did not abuse its discretion in ordering mother's visitation be conditioned on two clean drug tests. "'""The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion."'"" (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) The court acted well within its discretion in ensuring N.F.'s safety. Given the court's concern with mother's lack of credibility during her testimony, and with mother's long-term drug use, the requirement of two clean tests was within the court's discretion. Moreover, the court ordered that two tests occur the week after the jurisdictional hearing, minimizing any delay of visitation.

Mother's reliance on *In re T.H.* (2010) 190 Cal.App.4th 1119, 1123, is misplaced. In that case the court ordered visitation based upon "the 'agreement of the parents.'" (*Ibid.*) The appellate court concluded that such an order delegated to the mother the power to determine whether father will have any visits. (*Ibid.*) The juvenile court "abused its discretion by framing its order in a way that gave mother an effective veto power over" father's visitation right. (*Id.* at p. 1124.) Here, the juvenile court did not similarly delegate authority. It directed visitation occur after mother provide two clean tests. Because here the court set the amount and nature of mother's visitation, the court's order did not amount to an improper delegation of authority. Mother demonstrates no error.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.                    RUBIN, J.

8