Filed 9/11/20  In re M.S. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W.W.,<br><br>        Defendant and Appellant. | A158842<br><br>(Humboldt County<br>Super. Ct. No. JV170220) |

W.W. (mother) and V.W. (father) appeal an order terminating parental rights with respect to their now four-year-old daughter, M.S.  Mother contends the juvenile court committed numerous errors under the Indian Child Welfare Act ("ICWA") (25 U.S.C. § 1902), beginning very early in the case and continuing for 30 months until the case reached the termination stage.  Then, she contends, additional ICWA-related errors were made at the Welfare and Institutions Code section 366.26[1] hearing pertaining to M.S.'s

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

status as an Indian child under the ICWA and pertaining to efforts to enroll her in the tribe. The collective impact of these errors, she contends, is that they interfered with what she describes as the "concurrent jurisdiction" of the Tolowa Dee-ni' Nation over the child. Father has filed a brief joining in her arguments.

Many of the claimed errors the parents seek to raise are not cognizable on appeal from the order terminating parental rights. The rest were harmless. We affirm.

## BACKGROUND

### A. First ICWA Notice to the Tribe at the Outset of This Case in November 2016, and Proceedings Thereafter

These proceedings were initiated in Santa Clara County on November 2, 2016, when M.S. was 10 months old, after local police took the baby into emergency protective custody upon finding her living in squalid conditions in a car with her parents who were abusing drugs and neglecting her.

Based on an interview with mother at the time M.S. was initially detained, the petition alleged M.S. "may have Indian ancestry" and "is or may be a member of or eligible for membership" in two tribes, one of which was the Tolowa Tribe ("the Tribe"). Mother executed a Parental Notification of Indian Status (Judicial Council Form ICWA-020) stating she is or might be a member of those tribes.

On November 18, 2016, the Santa Clara Department of Family and Children's Services (DFCS) mailed notice of these proceedings to the Tolowa Tribe using Judicial Council Form ICWA-030 ("Notice of Child Custody Proceeding For Indian Child"), which included notice of the upcoming

2

jurisdiction/disposition hearing.[2]  Mother concedes this ICWA notice was proper.

The Tribe responded to the ICWA notice on November 28, 2016, as follows:  "According to our enrollment records along with the information provided, [M.S.] [date of birth omitted], *is not enrolled with the Tolowa Dee-ni' Nation.  Her mother* [*W.W.*] *is not enrolled with the Tolowa Dee-ni' Nation.* [¶] *Tolowa Dee-ni' Nation reserves the right to intervene in this case.*  Feel free to contact me at the above numbers should you have any questions or require further information."  (Italics added.)

At the contested jurisdiction/disposition hearing, which concluded on December 20, 2016, the Santa Clara County juvenile court sustained the allegations of the petition (as amended), declared M.S. a dependent of the court and ordered reunification services.

At a subsequent review hearing on March 14, 2017, the Santa Clara County juvenile court made a finding that "ICWA does not apply."[3]  The finding was predicated on a representation in a status report previously filed by DFCS on December 20, 2016, that attached a copy of the Tribe's response and indicated based on it that M.S. was not "ICWA eligible."

Despite that ICWA finding, Santa Clara County child welfare authorities continued their efforts to determine whether M.S. is an Indian child, and also learned mother was attempting to gain recognition as a member of the Tribe.  As later described in a status review report, on

---

[2]  The relatives identified in the November 18, 2016 ICWA notice as having tribal ancestry were mother, mother's biological mother, one of her biological grandmothers, and another named relative of unspecified relationship.

[3]  That finding would be incorporated into numerous court orders over the course of the case.

3

April 27, 2017, the girlfriend of mother's maternal grandfather (Kerri K.) reported that "the tribes that [mother] has ancestry in are from Yurok (Clamath, [*sic*] CA)[4] and Tolowa (Smith River, CA). [Mother's] biological mom has [*sic*][mother's] birth certificate to the tribes and is waiting for approval from their respective councils on the matter of recognizing [mother] as a member of the tribes." Over the course of May and June, the Agency attempted to make contact with mother's biological mother and her (unspecified) maternal great aunt but was unable to do so because mother could not locate either of them.[5]

Several months later, in August 2017, M.S. was returned to her mother's custody with family maintenance services, and on October 2, 2017, the matter was transferred to Humboldt County because mother had moved there.

On May 31, 2018, M.S., now two and a half, was taken into protective custody again after multiple referrals she was living in unsafe, unsanitary conditions with both parents who were again abusing drugs and living together, itinerantly in various squalid locations. The Humboldt County

---

[4] It was subsequently determined that M.S. is not eligible for membership in the Yurok Tribe, and no issue about that is raised here.

[5] On May 17, a social worker asked mother to provide contact information for her biological mother and her great aunt, but mother said the latter had no phone number and that she (mother) usually initiates contact through a friend. Mother told the social worker she would provide the social worker's phone number to her own mother and also would get the aunt's contact information. But about two weeks later, on May 31, mother reported she was "unable to obtain contact information from [*sic*] her great aunt" and had not been able to contact her mother. On June 22, the social worker checked in again with mother to inquire about her progress in obtaining contact information for her mother and great aunt, and again mother had not yet been able to contact her mother or get her great aunt's contact information.

Department of Health & Human Services, (Department) filed a supplemental petition under section 387 on June 4, 2018, and it was sustained (as amended) after a contested jurisdiction hearing on November 6, 2018, with all prior orders ordered to remain in effect.

In August 2018, a few months after M.S. was detained the second time, she was placed with a paternal relative (Wendy) in Fairfield, California who had previously cared for her after her initial removal, and with whom M.S. would continue to live for the duration of these proceedings.

On April 19, 2019, at a contested disposition hearing on the section 387 petition, the juvenile court terminated reunification services and set the case for a permanency plan hearing under section 366.26 on August 19, 2019, with a prehearing conference on July 23 for receipt of the Department's report. By this juncture, the case had been in the system for 28 months and the juvenile court determined, among other things, there was no statutory basis for extending further reunification services.

Mother challenged the order by petition for extraordinary writ, which we denied on the merits in an opinion filed July 25, 2019. Mother acknowledges, "no ICWA claim was raised in [her] writ petition."

## B. Second ICWA Notice in June 2019 and Proceedings Thereafter

After the juvenile court had terminated reunification services and set the case for a section 366.26 hearing, the Department obtained new information about M.S.'s tribal ancestry and her potential eligibility for enrollment in the Tribe which culminated in sending a second ICWA notice to the Tribe.

On May 7, 2019, the maternal grandfather's girlfriend (Kerri K., who is also sometimes referred to in the record as his partner) emailed the social worker to report that "I received an enrollment application from the Tolowa

5

Dee-ni' Nation for our granddaughter, [M.S.]. It requires an original birth certificate, a copy of her Social Security Card, a family tree, and the application form. [Mother] is aware of this."

Then on May 15, mother emailed the social worker (on the advice of counsel) that "I believe I am eligible for enrollment with the Tolowat [*sic*] Tribe and am investigating [M.S.'s] eligibility for enrollment as well," and asked the social worker to contact the Tribe's social worker "as quickly . . . as possible" because "I believe that she needs [M.S.'s] social security number." The social worker responded, asking if she had any "new information to provide so the Department can enquire about tribal status." He also informed mother how to get a copy of M.S.'s birth certificate as well as her social security card which he also was in the process of requesting. Mother asked to "set up an appointment asap to come in . . . and fill out icwa paperwork," noting "[t]his is time sensitive." The social worker offered to meet, or suggested mother instead could provide him with a family tree of her Indian ancestry, including full names, dates of birth, tribal affiliation and last known addresses for each person.

Mother's counsel emailed the social worker on May 23, asking what was being done "regarding ICWA," to which he responded by asking for any "new or additional information that was not provided to Santa Clara," and offering to "update[e] the ICWA 030 [notice] if there is."

On June 6, mother filed an ICWA-020 Parental Notification of Indian Status indicating that a "maternal great uncle and children" are or were members of the Tolowa Tribe. Accompanying the notice was information that her own mother had a tribal membership or enrollment number, "but we do not know it." For the first time, she also provided the names of three cousins who were associated with the Tribe, and disclosed that both she and her

6

mother had received medical treatment on "many" occasions from the United Indian Health Services.

Up to this point, the Department had consistently taken the position in its court filings that ICWA had been found inapplicable on March 14, 2017, and no new information had been received.

On June 14, 2019, the Department sent a second ICWA notice to the Tribe (again, using Judicial Council Form ICWA-030). It set forth the new information mother had provided, included a copy of M.S.'s birth certificate as well as the supplemental section 387 petition, and gave notice of the upcoming section 366.26 pre-hearing conference on calendar for July 23.

The Tribe responded to the second ICWA notice eleven days later, on June 25, this time expressing an intent to participate in the case. It wrote: "According to our enrollment records, [M.S.] is not enrolled with the Tolowa Dee-ni' Nation. *However, she is eligible to apply for enrollment. This is an ICWA case.* [¶] The Tolowa Dee-ni' Nation reserves the right to intervene in this case. *A notice of intervention will be forthcoming.* Please forward all case information to our office at the above address. Feel free to contact me at the above numbers should you have any questions or require further information." (Italics added.)

The Department took immediate steps over the following month to respond to this new information. On July 2, it reported to the juvenile court that M.S. "has been found eligible for enrollment in the [Tribe]. The Indian Child Welfare Act applies in this case and an expert's testimony is required." It retained an Indian expert, was granted court approval to share the juvenile court file and would later retain a second Indian expert. On July 10, the Department gave the Tribe notice of the section 366.26 hearing, on calendar for August 19, 2019. The Department also had multiple contacts with the

7

Tribe in early July to discuss the case, inquire about the process for getting M.S. enrolled in the Tribe, and offer its assistance and documentation to facilitate that process. In addition, the Department coordinated with M.S.'s aunt Wendy to engage M.S. in Native American cultural activities, including local pow wows, and to facilitate her use of Native American health services based upon proof of her eligibility for enrollment.

The Tribe's social worker told the Department in these discussions that the Tribe had determined M.S.'s eligibility for enrollment based on the certified degree of Indian blood from mother and the fact that mother's brother is an enrolled member. She also relayed that enrollment happens once a year, and the next enrollment period was in approximately six months, in May 2020. She said mother had picked up the enrollment packet and would need birth certificates, a social security card, and a copy of the certified degree of Indian blood paperwork.

Thereafter, on July 17, mother filed a section 388 petition asserting that M.S. is an Indian child and ICWA applies. She asked to vacate the order terminating reunification services and to "[r]e-open the case from jurisdiction and proceed according to the heightened burdens of proof" under ICWA, and/or return M.S. to her custody, asserting that the Department should have made active efforts to reunify her with M.S. The petition was set for a hearing on July 26 to determine whether an evidentiary hearing would be ordered. She later amended the petition to request the court terminate its jurisdiction and return M.S. to her because of changed circumstances unrelated to M.S.'s Indian ancestry (i.e., that mother was no longer using drugs, had a stable job and a home), and eventually her amended petition was consolidated for hearing at the same time as the permanency planning hearing.

8

At the pre-hearing conference on July 23, 2019, the Tribe appeared through counsel. It raised no objections, did not assert M.S. is a Tribe member, and expressed no intention to assert (or not assert) tribal jurisdiction over the case. All the Tribe's counsel said was that the "discovery" provided to the Tribe by the Department "indicate[s] that the child *may be* an Indian child. So, I do believe that the Court should go through the further inquiry and due diligence process in this case [¶] . . . at a minimum." (Italics added.) The juvenile court agreed, and said that the ICWA issues that had been raised by mother would need to be addressed, and that "we should be complying with the additional requirements of the Act" given "where we are at this point."

The Tribe made no further appearances in the case.

According to a report filed some months later by the Department, on July 25, 2019, the Tribe's attorney reported to the involved parties stating, 'The Tribe will participate in this case to ensure that the child's best interests are met, including but not limited to, the right to maintain a connection with the Tribe. Since the Tribe is participating, the Tribe will not be taking a position on the permanency plan nor the County's proposed ICWA expert."

At a pre-trial hearing on August 6, 2019, there were informal reports the Tribe did not intend to participate formally in the case. The minor's counsel, who had been in contact with the Tribe's attorney, reported that the Tribe was "not formally intervening, although they have indicated to me that they continue to take the position of agreeing from intervening [*sic*] and will not be submitting any recommendations." She also reported that although the Tribe had indicated some interest in doing a home visit it no longer intended to do one, because it considered M.S.'s current placement to be appropriate as it was with a "tribally-defined family member." M.S.'s counsel

9

also proposed that she be designated as a holder of M.S.'s birth certificate "so that we can facilitate enrollment, if and when Mother does enroll next year." The juvenile court also believed the Tribe did not intend to appear. It observed that the Tribe's attorney "did indicate on the last date[6] that she would no longer be appearing in the matter and . . . I think she did say they were not intervening and they weren't appearing in the matter any further. [Counsel for the Tribe] made those comments, personally."

Thereafter, in August 2019, the Tribe executed a "Cultural Agreement" with M.S.'s aunt Wendy. The agreement, which does not specify whether M.S. is a member of the Tribe, recites that M.S. is "eligible to enroll in the Tribe because she is a descendent of the Tribe but is not promised enrollment because enrollment is a political process." The agreement's purpose was to "keep [M.S.] connected with the Tribe's social and cultural traditions regardless of [her] enrollment status," and the parties acknowledged that "preservation of [M.S.'s] cultural and social identity and connection to the Tribe are in [her] best interest." The parties agreed to "make active efforts to facilitate cultural connections and visitation" including attendance at the Tribe's annual event ("Dee-ni' Day"), and to have communications on a quarterly basis with "the Tribe's ICWA department" about M.S.'s cultural, social and educational growth.

The Department filed three reports before the section 366.26 hearing, and served all three on the Tribe: its main report (entitled, "366.26 WIC Report") which recommended terminating parental rights and selecting

---

**6** There had been a previous hearing on July 26, 2019, at which the court calendared mother's section 388 petition for an August 19, 2019 hearing. The record does not include a hearing transcript but the clerk's minutes do not indicate an appearance by the Tribe's counsel.

10

adoption as the permanent plan, the adoption assessment and a written report by ICWA-qualified Indian expert, Angela Sundberg.

The Department reported that M.S.'s paternal aunt Wendy wanted to provide her with a permanent home and was in the process of working with its adoptions unit.

The reports also touched on the Tribe's continued input into the case. According to the section 366.26 report, the Department had "reached out to the [Tribe] to discuss their position on adoption, tribal customary adoption, or their preferred permanent plan" and additional information about the Tribe's position would be provided when received. The adoption assessment report noted that the Tribe's attorney "will continue to work with the Tribe in order to continually assess what is in the best interest of [M.S.]" It also noted that the Tribe "has declined to state a position on permanency for [M.S.]" but that M.S.'s paternal cousin "understands the importance of keeping [M.S.] connected to her ancestral heritage, and is willing to do so," and that "[i]f [the Tribe] objects to adoption as it will interfere with the child's connection to the [T]ribe or ability to enroll, then the adoptions unit will support the [T]ribe's request for an alternative permanent plan." The Department's ICWA expert, Ms. Sundberg, opined in her report (among other things) that she had spoken with the Tribe and reported that M.S. was "placed in an ICWA approved placement in which the [Tribe] approves" and the Tribe "is in agreement with the department of the recommendation of the adoption of [M.S.] with the current care provider." She also expressed the opinion that ICWA applies to the case, that active efforts had been made to prevent the breakup of the family, and that continued custody by the parents was likely to result in serious emotional or physical damage to M.S.

The combined hearing under section 366.26 and on mother's section 388 petition took place over four days, beginning on September 20, 2019, and concluding on October 11, 2019. The only two witnesses were mother and Ms. Sundberg.

The juvenile court took the matter under submission, and on November 4, 2019, it terminated parental rights orally on the record, and it entered a 13-page written ruling containing a statement of findings in support of the order and also denying mother's section 388 petition.

In its written findings, the court concluded ICWA does not apply, but in an "abundance of caution," the court applied ICWA's substantive standards anyway regarding the showing that must be made to terminate parental rights over an Indian child, and it found that they had been satisfied (including proof beyond a reasonable doubt, based on the testimony of a qualified expert witness, that continued custody by the parent is likely to result in serious emotional or physical damage, and that active reunification efforts had been undertaken). It also found that the Tribe supported the Department's recommendation, and that its rights had been fully protected in the proceeding.

Thereafter, on November 7, 2010, the court entered a written order terminating parental rights.

Both parents have timely appealed the order terminating parental rights, and mother also has appealed the denial of her section 388 petition.

## SUMMARY OF THE ISSUES

Mother acknowledges her ability to frame the issues on appeal is "somewhat problematic" given what she contends is an unusual set of circumstances. And for our part, given the breadth and scope of her appeal, in some instances we have trouble discerning the precise ruling(s) by the

12

juvenile court she challenges. We therefore start by identifying the issues as we understand them.

First, mother contends that, "The child welfare services agencies of Santa Clara and Humboldt Counties failed to recognize tribal concurrent jurisdiction, and that M.S. was an Indian child, when it was first asserted." This claim of error encompasses two subsidiary points: that "[i]n effect, the error was equivalent to a complete failure of notice," and "[t]he error wrongfully resulted in the dependency action being adjudicated for over 30 months without the concurrent jurisdiction of the [Tribe]." She also asserts "[t]he failure to recognize ICWA's concurrent jurisdiction at the outset of the case prejudiced the entire proceedings." She clarifies that "the error was not a failure of ICWA 'notice' per se, but a failure by the child welfare agencies to recognize that notice had been successful, thereby depriving that notice of legal fruition, so to speak." The result, she says, is that for much of the case the Tribe "was deprived of its concurrent jurisdiction and [mother] was deprived of the ICWA legal standards applicable to such jurisdiction."

This first set of arguments appears to challenge principally two rulings: (a) the December 20, 2016 jurisdiction/disposition order, because mother says the Tribe should have been given notice of the jurisdictional hearing yet was not; and (b) the juvenile court's determination on March 14, 2017, that ICWA did not apply, which she contends was erroneous and based on a mistaken interpretation of the Tribe's response to the first ICWA notice, and which then became the basis for a series of "factually incorrect orders" thereafter that, collectively, "barred the rightful concurrent jurisdiction" of the Tribe for 30 months, deprived mother and M.S. of "expeditious enrollment in the [Tribe]" and of "the imposition of the heightened standards applicable in an ICWA dependency action during the 30 months of error."

13

Second, she contends "[t]he failure of notice and lack of concurrent jurisdiction was prejudicial error." This encompasses subsidiary arguments that, under former rule 5.484 of the Rules of Court, the Department "failed to ensure M.S. was enrolled with [the Tribe]" before terminating parental rights, and failed to provide active efforts to secure tribal membership for M.S. These arguments are directed to the court's order terminating parental rights.

Third, and finally, she argues the juvenile court erred in finding at the section 366.26 hearing that M.S. is not an Indian child. She argues the juvenile court made inconsistent findings about this issue which requires reversal for clarification, and also erred to the extent it concluded M.S. is not an Indian child and ICWA does not apply.

As a remedy, mother asks us to reverse "the orders of the juvenile court" and remand the case to the jurisdiction and/or disposition stage. Alternatively, she asks for reversal of the order terminating parental rights and a limited remand with directions that active efforts be employed to enroll M.S. and mother in the Tribe, followed by a new section 366.26 hearing and determination.

In addressing these contentions, it is helpful to bear in mind what is not at issue. Mother does not challenge the adequacy of either of the two ICWA notices sent to the Tribe. On the contrary, she concedes in her reply brief that the initial notice was "correct[]." She also has not challenged the denial of her section 388 petition, despite the fact that she appealed that ruling too. She has not briefed any arguments about the juvenile court's denial of her petition. We therefore agree with the Department which asserts—without contradiction by mother—that she has forfeited her appeal from that ruling.

14

## I.

### *The Only Errors Cognizable on Appeal Are Those Encompassed Within the Order Terminating Parental Rights.*

Although mother claims multiple ICWA errors were made "starting early in the case" and continuing for 30 months, we cannot consider earlier errors in this appeal. " '[A]n unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.' " (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018; see, e.g., *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1160 [on appeal from order terminating parental rights, claim that entire dependency case was "defective from its inception" because mother was deprived of right to counsel at multiple junctures up through 18-month review hearing held not cognizable; "an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order"].) Here, parents have appealed only the court's November 4, 2019 order terminating parental rights, and so all we have jurisdiction to decide is whether any ICWA error occurred at the time of the section 366.26 hearing. We lack jurisdiction to decide whether the any earlier, unappealed orders were infected by ICWA error.[7] (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 10 (*Isaiah W.*) [on appeal from order terminating parental rights, mother cannot challenge juvenile court's earlier finding in dispositional order that ICWA is inapplicable but may challenge

---

[7] Mother also concedes that no ICWA claim was asserted in her writ petition challenging the April 20, 2019 order setting the section 366.26 hearing. This precludes our review of that order as well. (See § 366.26, subds. (*l*)(1), (2); *In re Jesse W.* (2001) 93 Cal.App.4th 349, 356.)

court's current finding to that effect subsumed within order terminating parental rights].)

Mother argues she has not "waived" or "forfeited" review of earlier rulings and that, under *Isaiah W.*, *supra*, 1 Cal.5th 1, the court's continuing duty to inquire whether M.S. is an Indian child renders "the error" cognizable in this appeal. But the problem here is not whether mother has adequately *preserved* any ICWA issue for appellate review (by raising the issue below); we agree that her failure to raise a question of law as to ICWA's applicability would not preclude us from considering the issue in a duly perfected appeal. (See *Isaiah W.*, at p. 9.) The problem is one of appellate jurisdiction.

In contending that earlier errors are reviewable, mother reads *Isaiah W.* too broadly. The Supreme Court held an ICWA notice error made *at the section 366.26 hearing* is reviewable on appeal from the order terminating parental rights notwithstanding a parent's failure to appeal a ruling earlier in the case as to ICWA's inapplicability. The reason is because a court's duty under ICWA to inquire whether the child is an Indian child is continuing, and so ICWA notice errors occurring at different stages of the proceedings are distinct errors. (See *Isaiah W.*, *supra*, 1 Cal.5th at pp. 10-11, 14-15.) The Supreme Court thus endorsed the majority view among the courts of appeal that allow review of ICWA notice errors on appeal from an order terminating parental rights (see *Isaiah W.*, at p. 13), several of which appellate decisions are cited by mother here.[8] *Isaiah W.* expressly

---

[8] See *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 258-260 [failure to appeal jurisdictional and dispositional order does not divest appellate court of jurisdiction to review adequacy of ICWA notice on appeal from order terminating parental rights]; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 737-739 [error in failing to give ICWA notice to three tribes held cognizable on appeal from order terminating parental rights notwithstanding parents' failure to appeal dispositional order or raise issue

16

recognized, though, that a parent cannot challenge an ICWA ruling made *at the dispositional hearing* on appeal of an order terminating parental rights because of basic constraints on our appellate jurisdiction. (See *Isaiah W.*, at p. 10.) Decisions by the courts of appeal are in accord, both pre- and post-*Isaiah W.*, and the Supreme Court in *Isaiah W.* did not discuss or call into question any of them. (See, e.g., *In re J.L.* (2017) 10 Cal.App.5th 913, 917, fn. 4 [on appeal from order terminating parental rights, findings made at detention hearing that ICWA is inapplicable not reviewable, citing *Isaiah W.*]; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340 [on appeal from order terminating parental rights, court of appeal lacks jurisdiction to reverse earlier orders for ICWA notice error]; *In re H.G.* (2015) 234 Cal.App.4th 906, 909, fn. 3 [same]; see also *In re A.M.* (2020) 47 Cal.App.5th 303, 320 [on appeal from order terminating parental rights, claims of ICWA errors not construed as applying to ICWA findings made at earlier hearings].)

Our inquiry does not stop there, however. As this court has previously explained, the rule precluding appellate review of prior unappealed, final appealable orders entered in a dependency case (sometimes referred to as a rule of "waiver") "will [not] be enforced [if] due process forbids it." (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208.) Among other things, this requires a showing of "some defect that fundamentally undermined the statutory scheme so that *the parent would have been kept from availing himself or herself of the protections afforded by the scheme as a whole*." (*Id.* at p. 208, italics added.)

below]; see also *In re Nikki R.* (2003) 106 Cal.App.4th 844, 848-849 [claim that ICWA notice was defective held cognizable on appeal from order terminating parental rights].

Attempting to bring herself within this exception, mother argues it was impossible to have raised these ICWA issues earlier in the case, because "no party[] was aware of the existence of the November 28, 2016 [Tribe] letter until after the setting of the section 366.26 hearing." (That was the Tribe's response to the initial ICWA notice stating that neither mother nor the child were enrolled but that the Tribe was reserving its right to intervene.) We are not persuaded. Mother does not provide any citation to the record for her assertion that "no party was aware of the existence" of the letter until after the section 366.26 hearing was scheduled. For example, mother made no such claim in her section 388 petition filed in July 2019. Regardless whether the Agency correctly or incorrectly characterized the substance of that letter in its December 20, 2016 status report where it indicated M.S. was *not* eligible for tribal membership (an issue we need not decide), a copy of the Tribe's letter was attached to that report, for all who cared to see and read it.[9]

---

[9] Although the record does not include a proof of service accompanying the December 20, 2016 report, parents do not claim on appeal they were not timely and properly served with the December 20, 2016 report and its attachments. We also find no indication in the record parents ever objected below on or before March 14, 2017, when the Santa Clara County juvenile court first found that ICWA did not apply, that neither they nor their counsel had been served with the attachments to the December 20, 2016 report, which would have cured any possible problem contemporaneously. In addition, the clerk's minutes state that the December 20, 2016 report was admitted into evidence at the combined jurisdiction/disposition hearing held that same date, with both parents and their counsel present; that obviously would have been the occasion to speak up if the attachments were missing. Yet, there is no indication anybody did. On the contrary, a contested hearing was not held, both parents waived advisement of their rights, and submitted on the petition.

18

Mother likens this case to *In re Gerardo A.* (2004) 119 Cal.App.4th 988, where an ICWA finding made at the disposition hearing was held to be cognizable on appeal from an order terminating parental rights because due process required it. In *Gerardo A.*, the appealing father was incarcerated, his whereabouts had been unknown until after mother's reunification efforts had failed, and he did not receive notice of the dependency proceedings or mother's claim of Indian ancestry until the case had reached the permanency planning stage. (*Id.* at p. 991.) In those circumstances, the court of appeal held, "this appeal represents the first opportunity for appellant to raise the issue of ICWA compliance. To accept [that the issue is not reviewable] would be to violate appellant's due process rights." (*Id.* at p. 993.) But "[n]othing of the kind occurred here." (*In re Jesse W.*, *supra*, 93 Cal.App.4th at p. 360.)

We cannot turn the clock back to the beginning of this case to decide whether errors were made at the time of jurisdiction, disposition or thereafter. We have jurisdiction to address only those claims pertaining to the juvenile court's *current* ICWA findings, made at the time it terminated parental rights. (See *Isaiah W.*, *supra*, 1 Cal.5th at p. 10.)

A second reason mother's contentions about earlier ICWA errors are not cognizable is because there is nothing we could do to rectify them. Restoring this case to the jurisdiction/disposition stage would be pointless. "When no effective relief can be granted, an appeal is moot . . . ." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315.) The Department has explained this problem, and mother does not address or attempt to refute it. Even if we were to reverse the jurisdiction and disposition orders (assuming we had jurisdiction to do so), the juvenile court could not return M.S. to parental custody, because it has found beyond a reasonable doubt that doing so is likely to result in serious emotional or physical damage to M.S and that

19

finding is unchallenged in this appeal. And yet, the parents are precluded from receiving any further reunification services. As noted in our prior opinion, when the juvenile court terminated reunification services in April 2019, it ruled there was no statutory basis for extending reunification services any further given how long the case had been pending (28 months), and that ruling was and remains entirely unchallenged. For these reasons, there is no effective relief we could grant even we concluded the juvenile court erred at one or more junctures before it terminated parental rights. (See *ibid.* [dismissing appeal from denial of section 388 petition; reversal "would be futile" since "mother's parental rights cannot be restored even were we to agree with mother" that juvenile court erred].)

## II.

### *The Juvenile Court Did Not Prejudicially Err in Terminating Parental Rights.*

This brings us, then, to the section 366.26 hearing. To briefly recap, mother argues the juvenile court erred at the termination hearing in finding that M.S. is not an Indian child and concluding that ICWA does not apply, and also made inconsistent and conflicting findings as to M.S.'s status as an Indian child. And, captioned under a "prejudicial error" analysis of rulings made earlier in the case that we have concluded are not reviewable here (i.e., the "fail[ure] to recognize that the [Tribe] had intervened in the case from the time of jurisdiction"), she also argues the order terminating parental rights is erroneous under former rule 5.484(c) of the California Rules of Court, because active efforts were required to secure her and M.S.'s enrollment in the Tribe before parental rights were terminated.

We address these issues in turn.

## A. The Juvenile Court's Findings As to ICWA's Applicability and M.S.'s Status As an Indian Child

The legal framework applicable under ICWA in dependency proceedings is well-established. As summarized by our Supreme Court: "In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child. Congress defined 'Indian child' for these purposes to mean 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) When applicable, ICWA imposes specific requirements on child custody proceedings in state court. Among other things, when 'the court knows or has reason to know that an Indian child is involved,' the party seeking to remove the Indian child from the custody of its parent or Indian custodian, or to terminate parental rights, must 'notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention.' (25 U.S.C. § 1912(a).) If the parent, Indian custodian or tribe cannot be determined, notice must be given to the Bureau of Indian Affairs (BIA). (*Ibid*.) The tribe may intervene 'at any point in the proceeding.' (*Id*., § 1911(c).) Under certain circumstances, the court must 'transfer such proceeding to the jurisdiction of the tribe.' (*Id*., subd. (b).) If the proceeding is not transferred, the party seeking to remove an Indian child must 'satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.' (*Id*., § 1912(d).) The court may not enter an order removing an Indian child 'in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that

21

the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.' (*Id.*, subd. (e).) Similarly, an order terminating parental rights requires 'a determination, supported by evidence beyond a reasonable doubt,' that continued custody by the parent or Indian custodian is likely to result in such damage. (*Id.*, subd. (f).) Any placement of an Indian child must follow the preferences set out in ICWA. (*Id.*, § 1915.) Finally, ICWA authorizes collateral attacks: When a court removes an Indian child or terminates parental rights in violation of ICWA, 'any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action. . . .' (*Id.*, § 1914)." (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90-91 (*Abbigail A.*).) California has incorporated ICWA requirements into statutory law, and "provides, among other things, that 'Indian child' and ICWA's other critical terms 'shall be defined as provided in [ICWA].' " (Welf. & Inst. Code, § 224.1, subd. (a).)" (*Abbigail A.,* at p. 91.)

Here, mother asserts the order terminating parental rights must be reversed because the juvenile court made inconsistent findings as to M.S.'s status as an Indian child and as to whether ICWA applies to this case, and also erred to the extent its ruling may be construed as a finding that M.S. is not an Indian child and that ICWA does not apply.

The juvenile court made a variety of findings on these subjects. In its written findings entered on November 4, 2019, the court ruled "ICWA does *not* apply" because "mother and the child are not yet enrolled members of any Indian tribe." (Italics added.) Elsewhere in those findings, however, it said "ICWA *may* apply." (Italics added.) And "in an abundance of caution," it undertook the complete substantive analysis required by ICWA to terminate

parental rights over an Indian child. Subsequently, in the JV-320 order terminating parental rights filed on November 7, 2019, the juvenile court checked boxes stating, "This case involves an Indian child," (at items 4(b) and 8(b)) and again made the required ICWA findings.

First, although we agree the court's rulings as to M.S.'s status as an Indian child and ICWA's applicability are unclear and even inconsistent, any error was harmless beyond a reasonable doubt. Mother does not assert the juvenile court *violated* ICWA in terminating parental rights. For example, there is no argument the Tribe was not notified of the termination hearing (it was). There is no argument the court failed to apply the appropriate legal standards applicable to an Indian child when it terminated parental rights (it did so). Right or wrong, the court's legal conclusion as to whether M.S. is or is not an Indian child, or whether ICWA applies, had no impact on the outcome of the termination hearing. The juvenile court *treated* M.S. as an Indian child from the moment the Department notified it of the Tribe's response to the second ICWA notice and asserted that "[t]he *Indian Child Welfare Act applies in this case.*" (Italics added.) The juvenile court applied the legal standards applicable to an Indian child at the termination hearing, and there is no argument to the contrary.

For these reasons, it is unnecessary to decide whether M.S. meets the definition of an "Indian child." (See 25 U.S.C. § 1903, subd. (4) [unmarried person under age 18 who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"]; § 224.1, subd. (a) [incorporating same].) We have some doubts about the juvenile court's finding that "ICWA does not apply" because "mother and the child are not yet enrolled members of any Indian tribe." For one thing, only a tribe has authority to determine who is a

23

member, courts do not, and mere evidence a child is not enrolled is not determinative (see *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 15; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 654-655; *In re K.P.* (2015) 242 Cal.App.4th 1063, 1071-1072; *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 207-208; §224.2, subd. (h)); yet here, the parties have not directed us to anything in the record that definitively reflects the *Tribe's position* as to whether it considers M.S. (or her mother) to be a member, despite their lack of enrollment.[10]  Second, the juvenile court does not appear to have applied the correct statutory criteria to decide whether ICWA applies.

Resolution of M.S.'s status as an Indian child is governed by the standards set forth in section 224.2 (entitled, "Determination whether child is an Indian child; considerations; scope of inquiry; membership status"), a statute that became effective on January 1, 2019, while these proceedings were underway.  Adopted as part of comprehensive revisions to conform state law to the requirements of recent changes in federal ICWA regulations (see *In re M.W.* (2020) 49 Cal.App.5th 1034, 1042-1043), section 224.2 imposes different requirements on courts and juvenile welfare authorities in ascertaining a minor's "Indian child" status depending on whether there is a "reason to believe" a child is an Indian child or "reason to know" that.  It states that "[w]hen there is reason to know that the child is an Indian child,

---

[10]  Mother argues the Tribe's response to the second ICWA notice *is* conclusive evidence of M.S.'s membership in the Tribe, but we do not read it that way and the record as a whole is ambiguous.  The Tribe's response did not state that M.S. is a member.  It said she was "eligible to apply for enrollment" and "[t]his is an ICWA case," reserved the right to intervene, and stated "[a] notice of intervention will be forthcoming."  When the Tribe appeared, through counsel, at a subsequent hearing it made no assertion of tribal membership and said M.S. "*may be* an Indian child."  (Italics added.)

24

*the court shall treat the child as an Indian child* unless and until the court determines on the record" pursuant to statutorily prescribed procedures "that the child does *not* meet the definition of an Indian child" under state and federal law. (§ 224.2, subd. (i)(1), italics added; see also *id.*, subd. (d) [defining "reason to know"].) By contrast, when there is only "reason to believe" the child is an Indian child, section 224.2 requires further *inquiry* by means of statutorily enumerated procedures, following which the court may make a finding that ICWA does not apply if "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child." (See *id.*, subds. (e), (i)(2).)

We express no opinion as to how section 224.2 applies in the circumstances here. Although that statute applied to this case by the time of the November 2019 termination hearing (see *In re A.M.* (2020) 47 Cal.App.5th 303, 321; *In re M.W.*, *supra*, 49 Cal.App.5th at p. 1044), neither the parties nor the juvenile court proceeded under the standards it prescribes in assessing M.S.'s status as an Indian child and ICWA's applicability, and on appeal the parties have not discussed the statute or briefed its application to this record. We are mindful of the need for expeditious resolution of dependency appeals, a policy that would be thwarted were we to call for supplemental briefing concerning the impact of section 224.2 on the juvenile court's findings about ICWA's applicability when it can have no impact whatsoever on the court's decision to terminate parental rights.

Accordingly, we neither affirm nor reverse the juvenile court's findings as to ICWA's applicability because they are immaterial to the outcome of this

25

appeal.  We presume that in going forward, the parties and the juvenile court will proceed according to the standards set forth in section 224.2.

> ### B. The Department's Efforts to Assist M.S. to Enroll in the Tribe.

Next we come to mother's arguments that the Department violated former rule 5.484(c) of the California Rules of Court ("former rule 5.484(c)"), because it did not take appropriate steps to help M.S. enroll in the Tribe.

Former rule 5.484(c), in effect at the time of the termination hearing, provided as follows:

"**Active efforts.** [¶] In addition to any other required findings to place an Indian child with someone other than a parent or Indian custodian, or to terminate parental rights, the court must find that active efforts have been made . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and must find that these efforts were unsuccessful.

"(1) The court must consider whether active efforts were made in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's tribe.

"(2) *Efforts to provide services must include pursuit of any steps necessary to secure tribal membership for a child if the child is eligible for membership in a given tribe,* as well as attempts to use the available resources of extended family members, the tribe, tribal and other Indian social service agencies, and individual Indian caregivers."[11]  (former Cal. Rules of Court, rule 5.484, reprinted at West Ann. Codes, Rules (2019 ed.), italics added.)

---

[11]  Effective January 1, 2020, this rule has been renumbered without change as rule 5.485(c)(3).

In upholding its validity, the Supreme Court interpreted former rule 5.484(c) as applicable only to an Indian child. (See *Abiggail A.*, *supra*, 1 Cal.5th at p. 96.) As so construed, the Supreme Court concluded it did not conflict with either state or federal law. There was no question, the court explained, that a juvenile court "may properly direct that steps be taken to pursue tribal membership for a child who, while not a member of a tribe, is already an Indian child to whom ICWA applies because he or she is both eligible for membership and also the biological child of a member." (*Id.* at pp. 96-97, citing 25 U.S.C. § 1903(5) and § 224.1, subd. (a).)

At the same time, however, the Supreme Court struck down a related rule (former rule 5.482(c)) that required active efforts to secure tribal membership for *a non-Indian* child who is eligible for tribal membership. (See *Abiggail A.*, *supra*, 1 Cal.5th at pp. 91-95.) The latter rule, the Supreme Court observed, "invites unnecessary delay by requiring the court to make efforts to secure tribal membership for children who are not Indian children, apparently without regard to the family's wishes, and to apply ICWA's requirements in cases involving children who are not and may never become Indian children." (*Id.* at pp. 95–96.) The Supreme Court held former rule 5.482(c) was invalid, because it conflicted with state laws designed to increase compliance with ICWA while leaving non-Indian children subject to laws generally applicable in dependency proceedings.[12] (See *Abbigail A.*, at pp. 92-93.)

---

[12] Former rule 5.482(c) was both invalidated by the Supreme Court in *Abbigail A.* and repealed by the Judicial Council before this case began. (See Amendments to the California Rules of Court adopted by the Judicial Council on July 29, 2016, effective on Aug. 15, 2016.) Yet mother cites and relies on former rule 5.482(c) too, as if it applies here. We are puzzled by this, but suffice it to say it does not.

Accordingly, in this case, any duty on the part of the Department to take steps to assist M.S. in securing enrollment in the Tribe turns entirely on whether she is an Indian child. But, again, that is an issue we need not, and do not, reach.

Here, the juvenile court made a finding that active efforts had been made to prevent the breakup of an Indian family. It made no express findings under former rule 5.484, however, nor was it asked to do so. Mother does not assert that such findings should have been made. Instead, she appears to construe the court's active efforts finding as encompassing an implied finding that the Department complied with former rule 5.484(c). She states: "Because of the department's own notice error, they prejudicially failed to use active efforts to enroll M.S., which undermines the juvenile court's finding when it terminated parental rights that the Department provided active efforts under California Rules of Court, rule 5.484(c) to secure tribal membership for the child." (Fn. omitted.) But she then seemingly contradicts herself when she asserts "the juvenile court was required, *but failed*, to use the 'active efforts' standard to ensure [M.S.'s and mother's] enrollment prior to termination of parental rights." (Italics added). However we construe her arguments, she has not demonstrated any prejudicial error under former rule 5.484(c) even assuming, without deciding, that M.S. is an Indian child and therefore that former rule 5.484(c) applies at all.

A finding the Department complied with its obligations to assist with the tribal enrollment process is reviewed for substantial evidence. (*In re C.B.* (2010) 190 Cal.App.4th 102, 134 (*In re C.B.*).) Mother does not summarize any of the evidence bearing on this issue, however, and so we could deem the issue forfeited. An appellant who challenges the sufficiency of the evidence must set forth " 'all material evidence on the point . . . . Failure to do so

amounts to waiver of the alleged error . . . ." (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317.)

Even if we considered the issue, there is substantial evidence to support the court's implied finding that appropriate efforts in this regard were undertaken. As soon as the Department received the Tribe's response and learned, for the first time, that M.S. was eligible to enroll, it immediately began coordinating with both the Tribe and M.S.'s family to gather the necessary documentation to complete M.S.'s enrollment application. Mother does not explain why those efforts do not suffice. Her argument seems to be that all of these steps should have taken place sooner. But we lack jurisdiction to consider that question. (See *In re C.B.*, *supra*, 190 Cal.App.4th at p. 135 [contention under former rules 5.482 and 5.484 of Rules of Court that active efforts to secure tribal membership were not undertaken earlier in the proceedings not cognizable on appeal from order terminating parental rights].)

Finally, any violation of rule 5.854 was clearly harmless.[13] Despite the fact that M.S. was not an enrolled member of the Tribe, the juvenile court treated M.S. as an Indian child and applied every substantive standard applicable under ICWA before it terminated parental rights, the Tribe concurred with the recommended disposition, and mother has not and cannot show she would have obtained a result more favorable at the termination

---

[13] The error asserted here, being one of state law under the Rules of Court, is subject to ordinary harmless error analysis. (See *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162 (*In re S.B.*) ["any failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error"].)

hearing had the Department taken additional active steps to assist M.S. to seek enrollment in the Tribe.

## III.

### *The Tribe's Rights Were Not Impaired.*

Finally, regardless of how the issues are framed, we reject mother's repeated assertions throughout her briefing that the Tribe's "concurrent jurisdiction" was violated, or that the juvenile court lacked jurisdiction to proceed as it did when it terminated parental rights.[14]

The Tribe was properly noticed of this case not once, but twice. And, despite having stated its intention formally to intervene, it never did so. Nevertheless, it formally appeared at one hearing, received notice of the section 366.26 hearing, received all written reports, and concurred with the Department's recommendations. Had the Tribe desired to participate in this case more actively or more fully than it did, including from the outset of this case when it initially "reserved" its right to intervene, it could have done so. Neither the parties nor the juvenile court ever "prevented" the tribe from participating in these proceedings. And it needed no invitation to do so. Both the Department and the juvenile court commendably proceeded with caution in adjudicating this case from the moment an assertion of tribal eligibility was made. There is simply no reason to conclude that the manner in which the parties and the juvenile court interpreted the Tribe's response to the first ICWA notice in 2016 impeded the Tribe's participation in this case or impaired its sovereign rights in any way.

---

[14] Mother's argument the juvenile court lacked fundamental jurisdiction at the section 366.26 hearing is difficult to follow, but she appears to retract it in her reply brief where she concedes "the jurisdiction issue here was not fundamental jurisdiction over subject matter and the parties without which the parties cannot proceed."

Finally, even if there were some error vis à vis the Tribe's rights (and we see none), "[a]n ICWA notice violation may be held harmless when the child's tribe has actually participated in the proceedings." (*In re S.B.*, *supra*, 130 Cal.App.4th at p. 1162; see also *In re Miracle M.* (2008) 160 Cal.App.4th 834, 846-847 [rule that defective ICWA notice is usually prejudicial "does not apply once the tribes have appeared and not asked that any prior actions of the juvenile court be invalidated"].) Obviously, in those circumstances, the purpose of ICWA's requirements have been served. That is certainly true here too, where the assertion is that the Tribe was erroneously prevented from exercising its sovereign rights in this case due to a mistake about the meaning of its response to the first ICWA notice. Given the Tribe's participation in this case, albeit not by means of formal intervention, any ICWA violations committed vis à vis *the Tribe* are harmless. (See *In re S.B.*, at p. 1162, fn. 2 [claim that ICWA notice was inadequate "is moot and/or harmless, because the Tribe did intervene and did participate below"].) "Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way."[15] (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.)

## DISPOSITION

The orders terminating parental rights and denying mother's section 388 petition are affirmed.

---

[15] Mother's contention that *Rebecca R.* and other cases expressing similar views involve children of no known Indian ancestry, is a distinction without a difference.

_____

STEWART, J.


We concur.


_____

RICHMAN, Acting P.J.


_____

MILLER, J.


*In re M.S.* (A158842)