[No. A094156. First Dist., Div. Two. Oct. 29, 2001.]

In re JESSE W. et al., Persons Coming Under the Juvenile Court Law.
CONTRA COSTA COUNTY SOCIAL SERVICE DEPARTMENT,
Plaintiff and Respondent, v.
JESSE W., Defendant and Appellant.

## COUNSEL

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Silvano B. Marchesi, County Counsel, and Paul Muniz, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**LAMBDEN, J.**—Jesse W. (father), a parent of three children made dependents of the juvenile court in proceedings initiated in December of 1998, appeals from a final-stage order of January 4, 2001, denying his motion for modification (Welf. & Inst. Code, § 388; all unspecified section references are to this code), appointing his parents guardians of the children, and vacating the dependencies. He claims no substantive error in any aspect of the order itself but claims it is void because of a procedural error committed 18 months earlier, when a referee's dispositional order on a supplemental petition (§ 387) removed the children from the home of their mother, Jacque C. (mother), without being countersigned by a juvenile court judge as required by section 249. We will reject his challenge.

### BACKGROUND

Petitions for Jessie W. (age four), Jacob W. (age two) and Jasmine W. (age 7 months) were filed by the Contra Costa County Social Service Department (department) first on December 18, 1998. Father and mother had lived together for years with the two older children in the home of the paternal grandparents, Gary and Melanie W. Father had moved out in February 1998, 10 months before the petitions were filed, and the youngest child, Jasmine, was born in April with positive toxics screens for methamphetamine and amphetamine. Each petition alleged as failure to provide

(§ 300, subd. (b)) the toxics screens, and that mother had been offered a voluntary family maintenance case plan but failed it by having dirty tests and being expelled from a drug treatment program for nonattendance. She was now in a residential program, and the children were faring well in the care of the grandparents. Father visited them at the grandparents' home and used the home for mail and messages, but did not live there.

Both parents appeared with counsel, and on January 19, 1999, mother admitted the petitions as amended to delete elaboration on her plan failures. At a dispositional hearing before Referee Bruce Stirling on February 9, the children were adjudged dependents and ordered to remain in mother's (i.e., the grandparents') home, with visits for father. Father voiced interest in having custody should foster care become necessary but had no job or stable residence at that time.

Mother did poorly in her residential program and left it without permission on May 23, leaving behind Jasmine, who had evidently come to live with her there. Mother disappeared for a time. Supplemental petitions for each child (hereafter referenced in the singular) filed on May 25th alleged an ineffective prior disposition. The children were detained the next day, but placed with the paternal grandparents, where they had been before. Mother and father each appeared for the detention hearing.

On June 15, 1999, the supplemental petition was sustained by Referee Stirling on mother's admissions to having left and been discharged from a residential program, having left Jasmine in the care of another resident, and having had patch tests that were positive for methamphetamine. It appears that mother had not returned to the grandparents' home, but had lived for a time with a sister in Vallejo and then with her own mother. She contemplated entering another residential drug program. Father had no known address. He visited the children but otherwise had made little progress on his reunification plan.

At a dispositional hearing on June 29, 1999, Referee Stirling continued the dependencies, made removal findings by clear and convincing evidence (§ 361, subd. (c)(1)), placed care of the children under department supervision, and set a six-month review hearing. The parents were advised of their rights to seek rehearing, but neither one did. The dispositional order was signed by the referee but not countersigned by a juvenile court judge,[1] a failure that undergirds all of father's arguments on this appeal. Neither parent appealed from that order.

---

[1] A judge had countersigned the earlier detention order of May 26—in two of the cases on May 27 and, in Jacob's case, on June 2. Then, in a separate postdisposition order by the same countersigning judge on August 2, in apparent response to a letter from the department

By the time of a six-month review as initially set for January 2000, mother had relapsed repeatedly, and father had made little progress, amid reports that he, too, was abusing drugs. The department recommended terminating services for both parents as to the two younger children, Jacob and Jasmine, setting a (.26) hearing (§ 366.26 [selection and implementation]) for them, and continuing services for both parents only as to Jesse. Then in February, responding to late progress made by father, the department changed its recommendation to extending services for him as to the younger children. By an order of February 10, Judge Lois Haight adopted the full recommendations (ending services only for mother as to the younger children) and set a 12-month review. No appeal was taken.

By the 12-month review, the recommendation was to terminate all services and set a .26 hearing for all three children. Father's progress had stalled, and it surfaced that he had been arrested in 1999 for possessing methamphetamine and a ninja star, and had been convicted and placed on probation. Mother was in jail for a drug offense. The children were thriving in the grandparents' care, and the grandmother had been ruled a de facto parent. Neither parent appeared personally at the review hearing held on July 28 before Judge Haight. Father's whereabouts were unknown to his counsel. The court denied counsel's requests for a continuance and family maintenance for father. It then followed the recommendations and set a .26 hearing. Each parent filed a defective petition for writ review of that order (Cal. Rules of Court [hereafter cited by rule only], rule 39.1B), without raising any issue about lack of countersigning on the June 1999 dispositional order, and this court dismissed their petitions in an unpublished opinion (case Nos. A092353 & A092354).

Father thereafter filed a modification motion (§ 388), seeking further services or family maintenance, and the matter was heard and denied at the .26 hearing of January 4, 2001, before Judge Haight. Father favored long-term foster care and was the only party not supporting the department's report recommendations for guardianship with the grandparents, vacation of the dependencies, and dismissal of the petitions. The judge followed those recommendations, also issuing letters of guardianship, and father appeals from the .26 hearing order.

## DISCUSSION

Section 249 states, "No order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the

erroneously stating that there had been *no* signed detention order in Jacob's case, the judge countersigned another one that had been forwarded with the letter (and originally signed on July 30 by a referee) that had typed on it, "Nunc Pro Tunc to May 26, 1999," the detention date. The record thus betrays some confusion.

juvenile court." Father urges that the June 1999 dispositional order on the supplemental petition—which was made by a referee, removed the children from a parent's home and was not countersigned to show approval by a juvenile court judge—never became "effective," was "void," and rendered all later orders void as well, including the .26 hearing order from which he appeals.

The department claims father lacks standing (see generally *In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193-1194 [93 Cal.Rptr.2d 480]; *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806 [54 Cal.Rptr.2d 560]), because he raises no substantive arguments against the appealed-from .26 order and was not entitled to a removal order (§ 361) back in June 1999 since he had not lived with the children for 17 months prior to the disposition (10 months before the original petitions) (cf. *In re Angelica M.* (1985) 170 Cal.App.3d 210, 214 [216 Cal.Rptr. 18]; *In re Katrina C.* (1988) 201 Cal.App.3d 540, 549 [247 Cal.Rptr. 784]), that is, since the removal was from mother's home, not his own. Alternatively, we are urged that father waived any right to challenge the removal by not appealing from the dispositional order years ago, in June 1999, and cannot attack it on this appeal of the January 2001 order. We conclude that waiver applies and, thus, do not reach the question of father's standing. Either argument, if successful, would require a dismissal of the appeal. (*In re Charmice G.* (1998) 66 Cal.App.4th 659, 671 [78 Cal.Rptr.2d 212] [waiver]; *In re Carissa G.* (1999) 76 Cal.App.4th 731, 738 [90 Cal.Rptr.2d 561] [standing].)

 The waiver rule as applied in dependency cases flows from section 395, under which the dispositional order is an appealable judgment, and all subsequent orders are directly appealable without limitation except for post-1994 orders setting a .26 hearing, which are subject to writ review (rule 39.1B) and related limitations (§ 366.26, subd. (*l*)). A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 [65 Cal.Rptr.2d 913]; *In re Janee J.* (1999) 74 Cal.App.4th 198, 206 [87 Cal.Rptr.2d 634].) In other words, "A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed." (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811 [41 Cal.Rptr.2d 731].) The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage "sabotage of the process" through a parent's attacks on earlier orders. (*In re Janee J., supra,* at p. 207.)

 Father attempts just such a sabotage. He could have appealed the dispositional order of June 1999 and/or the six-month review order of

February 2000, but did not. He did seek writ review of the 12-month review order of July 2000, which included a setting order made reviewable by rule 39.1B, but did not attempt, even at that late stage, to attack the lack of countersigning of the dispositional order. He makes that argument for the first time now, on an appeal from a January 2001 order establishing grandparent guardianship and dismissing the dependencies. Clearly, with three appealable prior orders in his wake, he cannot be allowed to sabotage the process now and, as he requests, return the case to a fictional state where the children were never removed from a parent's custody.

Father offers this answer to the waiver problem: because the June 1999 disposition order was never countersigned so as to become "effective" (§ 249), it was "void" and subject to attack anytime, on any subsequent appeal, and invalidates all later orders in the dependency, including the one from which he now appeals. He cites no authority directly on point but relies on *In re Heather P.* (1988) 203 Cal.App.3d 1214 [250 Cal.Rptr. 468] (*Heather P.*), where on a mother's appeal from permanency planning orders, the Court of Appeal held dispositional orders issued by a temporary judge 16 months earlier "null and void" for failure to stipulate *in writing* (mother had stipulated *orally*) to his authority to act (*id.*, at pp. 1224-1225, relying on Cal. Const., art. VI, § 21, and rule 244). The court reversed the latest orders, reasoning: "The voiding of the orders made by the temporary judge . . . also affects the subsequent orders contingent upon continuing the minor as a dependent child of the court, including the orders appealed from. All subsequent proceedings were dependent for their validity upon the validity of the order adjudging the minor a dependent child of the court since there would have been no dependent status to continue absent the previous adjudication." (*Heather P., supra*, at p. 1226.)

We find that reasoning flawed. First, *Heather P.* was expressly disapproved in its premise that the written-stipulation requirement is jurisdictional; the Supreme Court has since held that the requirement, while constitutionally derived, is directory only and that parties, by otherwise stipulating (e.g., to a referee acting as temporary judge) waive any objection based on failure to strictly comply. (*In re Richard S.* (1991) 54 Cal.3d 857, 863-866 & fn. 5 [2 Cal.Rptr.2d 2, 819 P.2d 843].) Second, *Heather P.* did not consider the waiver rule and its vital policy considerations for dependency cases; the holding effectively allowed a parent to sabotage the process with a late-stage challenge that could have been raised earlier. Third, we are not persuaded, at least in our context, by *Heather P.*'s voidness rationale.

Under our Constitution, "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform

subordinate judicial duties" (Cal. Const., art. VI, § 22), and the Legislature responds in the Welfare and Institutions Code that "[t]he judge of the juvenile court . . . may appoint one or more referees to serve on a full-time or part-time basis" (§ 247) and that "[a] referee shall hear such cases as are assigned to him or her by the presiding judge of the juvenile court, *with the same powers as a judge of the juvenile court,* except that a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge" (§ 248, italics added; *In re Mark L.* (1983) 34 Cal.3d 171, 176 [193 Cal.Rptr. 165, 666 P.2d 22] [referees are subordinate judicial officers empowered to hear and decide many matters "in the first instance"]). ■ The double jeopardy limitation does not apply in dependency proceedings. (*In re Roderick U.* (1993) 14 Cal.App.4th 1543, 1551, fn. 4 [18 Cal.Rptr.2d 555]; *In re Carina C.* (1990) 218 Cal.App.3d 617, 624 [267 Cal.Rptr. 205].) Even in delinquency proceedings (Welf. & Inst. Code, § 602), where it does apply, failure to secure a stipulation does not divest a referee of jurisdiction to act; rather, the stipulation is only necessary to give his or her acts finality. (*In re Roderick U., supra,* at p. 1551.)

■ Nonjurisdictional impact is also indicated here, for the statute says a referee's removal order is not "effective" until approved by a judge (§ 249); it does not say the order is "void" or "invalid" if not approved. This construction also comports with the surrounding statutes of which section 249 is a part and must be reconciled. (See generally *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].)

All orders by a referee are subject to de novo review by a juvenile court judge (§ 254) should a party seek a rehearing within 10 days after service of the order (§ 252) or a judge grant rehearing on his or her own motion within 20 days (§ 253). Thus while section 249 provides that a referee's removal order is not "effective until" approved by a judge, section 250 goes on to provide: "Except as provided in Section 251 [authorizing judges to require approval for other orders as well], all orders of a referee other than those specified in Section 249 shall become *immediately effective,* subject also to the right of review [by rehearing] as hereinafter provided, and shall continue in full force and effect until vacated or modified upon rehearing by order of the judge of the juvenile court. In a case in which an order of a referee becomes effective without approval of a judge of the juvenile court, it becomes final on the expiration of the time allowed by Section 252 for application for rehearing, if application therefor is not made within such time and if the judge of the juvenile court has not within such time ordered a rehearing pursuant to Section 253." (Italics added.)

Thus the term "effective" in section 249 connotes not a conferral of jurisdiction but the point at which the order may be carried out, and this is reflected in a case (not cited to us) that said of the predecessor statute, former section 555: "[T]he approval of a referee's order . . . is a safeguard against summary removal of the child from the custody of his parent or guardian. Approval of the order is not grounded upon a rehearing on the merits, it is merely an evaluation of the custody aspect of the order, keeping in mind that an application for a rehearing may be filed by a parent or guardian of the child. [Citation.] Otherwise the referee's order would become effective immediately . . . and the child would be subjected to the psychological trauma of a change of custody which might be reversed if a rehearing is granted." (*In re Dale S.* (1970) 10 Cal.App.3d 952, 956 [89 Cal.Rptr. 499] [rejecting a claim of double jeopardy].) The Supreme Court has observed of the implementing rule requiring approval within two judicial days (former rule 1318(b), now rule 1417(b)): "This rule, enacted to insure that such orders become operative without undue delay, further provides that 'The approval of a referee's order by a judge in these circumstances *is not a rehearing on the merits.* [Citation.] [¶] As the advisory committee comment to [the rule] explains, the approval provision of former section 555 (now § 249) was intended only as a requirement that the referee's order be 'countersigned' by a juvenile court judge, thereby attesting to the authenticity of the order. [Citation.] According to the comment, '. . . the approval procedures are, in effect, a requirement for a second signature, by a judge, before the referee's order becomes "effective," *i.e.*, operative.' " (*In re John H.* (1978) 21 Cal.3d 18, 26 [145 Cal.Rptr. 357, 577 P.2d 177].)

No published opinion seems to have squarely held whether failure to comply with section 249 is jurisdictional. (But see *In re Rashad B.* (1999) 76 Cal.App.4th 442, 446-447 [90 Cal.Rptr.2d 462] [resolving such an issue in unpublished part of opinion.].) One decision, however, has held that a violation of the implementing two-court-day rule (former rule 1318(b), now rule 1417(b)), is *not* jurisdictional: "[T]he rule . . . does not, could not, specify the order becomes void if not approved within that period. This is a rule of procedure only; it is to give immediate effect to the referee's order, which is not effective until the juvenile court judge signs it. [Citation.] Thus the one day's delay [here] simply delay[ed] the effective date when [the minor] could lawfully be removed from his parents' home." (*In re Robert D.* (1979) 95 Cal.App.3d 767, 773 [157 Cal.Rptr. 339].) The unspoken premise of that holding is that the two-day rule "could not" have jurisdictional consequences (*ibid.*) because the Judicial Council, having authority to promulgate only rules "not . . . inconsistent with statute" (Cal. Const., art. VI, § 6), would be going beyond the intent underlying the statute (see discussion in *In re Richard S., supra*, 54 Cal.3d at p. 863).

This implicit view of judge approval as nonjurisdictional and directed only to implementing the order, was stressed more recently as follows: "Section 249 provides that '[n]o order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court.' [Citation.] '[T]he requirement of approval by a juvenile court judge derives from the constitutional mandate that referees are restricted to performing "subordinate judicial duties." [Citations.] . . . [T]hat consti-tutional requirement is fully satisfied by obtaining the countersignature of a juvenile court judge, *so long as opportunity to seek a full rehearing remains available on request.'"* (*In re Clifford C.* (1997) 15 Cal.4th 1085, 1089 [64 Cal.Rptr.2d 873, 938 P.2d 932], italics added.) The same opinion goes on to stress that approval "does not reflect the judge's approval of the substantive merits of the referee's order" but serves only to attest to the order's authenticity. (*Id.* at p. 1094.)

Standing against that implicit judicial view is father's implicit position, underlying his contention that a direct appeal is unnecessary, that lack of approval under section 249 renders an order "void" in the sense reserved for fundamental lack of jurisdiction such as might allow collateral attack. (See generally *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950-951 [126 Cal.Rptr. 805, 544 P.2d 941].) We reject his position. ▮ "In its most fundamental or strict sense, lack of jurisdiction means 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or parties.' [Citations.] But in its ordinary usage the word encompasses many other situations, including judicial acts *in excess of jurisdiction.* [Citation.] While the fundamental type of jurisdiction can never be conferred by consent of the parties, the latter type is often subject to principles of consent and waiver." (*In re Christian J.* (1984) 155 Cal.App.3d 276, 279 [202 Cal.Rptr. 54].) ▮ Because a referee acts "with the same powers as a judge of the juvenile court" (§ 248), with or without a judge countersigning, and the countersignature does not reflect substantive review by the judge but only attests to the order's authenticity (*In re Clifford C., supra,* 15 Cal.4th at p. 1094), we reject the notion that lack of compliance with section 249 deprives a referee of fundamental jurisdiction and, in turn, invalidates further orders in the proceedings. If noncompliance with section 249 was a fundamental jurisdictional defect, as father insists, then the same could be said of failure to have judge approval of orders specified *locally* for such treatment by a juvenile court judge under section 251, in which case nullifying defects would arise in some counties, but not others. This was surely not intended by the Legislature. We hold that father's claim is subject to the waiver rule and thus cannot be reached on this appeal from a later appealable order.

Father insists that because the approval requirement is of constitutional origin (Cal. Const., art. VI, § 22), it cannot be waived by mere conduct or

inaction but must be waived by an express, informed waiver. But his cited authority (*In re Mark L.*, *supra*, 34 Cal.3d at p. 176 [failure to object to rehearing by a juvenile court judge did not waive a challenge to the court's jurisdiction to make the order]) is not on point, and our Supreme Court has held that the similarly important state constitutional requirement of stipulating that a referee act as a temporary judge (Cal. Const., art. VI, § 21; § 248 [requiring written stipulation]) is in effect waived by mere conduct in proceeding before a referee as though the referee had the requisite power—by conduct " 'tantamount to a stipulation' " that the subordinate officer was acting as a temporary judge rather than a referee (*In re Mark L.*, *supra*, at pp. 178-179). We hold that no express, informed waiver is required for the waiver rule to apply. Moreover, the record shows that father was advised by the referee of his right to have a rehearing before a judge (§§ 252-254; rule 1416) but simply never invoked that right. He was in fact *informed* of the substantive rights directly underlying the approval requirement. (*In re Clifford C.*, *supra*, 15 Cal.4th at p. 1089.)

·Father claims failure to comply with section 249 is a defect so fundamental to due process that it falls outside the waiver rule. ■ Such a defect, however, must be "[one] that fundamentally undermined the statutory scheme so that the parent would have been kept from availing himself or herself of the protections afforded by the [dependency] scheme as a whole" (*In re Janee J.*, *supra*, 74 Cal.App.4th at pp. 208-209), and nothing of the kind occurred here. Assuming for sake of argument that the right to a de novo rehearing before a judge of a removal order rises to such due process heights in the dependency scheme as a whole, the defect here did not in any way prevent father from seeking such review. Nor does he dispute that the June 1999 order was authentic—i.e., actually made by the referee.

Even if we could properly reach the issue, as in an appeal from the dispositional order, father would be hard pressed to show any prejudice (Cal. Const., art. VI, § 13). His children were not placed at risk of being traumatized by a too hasty removal that might be undone by a grant of rehearing. Father never sought a rehearing. If he had, the "removal" in this case did not change the children's home. Father had not lived there for 17 months, and the mother had left the home for a residential drug treatment program. The children remained in the care of the grandparents, with whom they had always lived.

■ Father's final effort to escape the waiver rule is to argue that the June 1999 removal order was never "effective" under section 249, thus was "void" and therefore was never *appealable*. The effort fails. Even if we could agree that the order was void, "where the law allows an appeal from a

judgment or order, it is appealable *even though void.*" (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 366 [217 P.2d 951], italics added.) Our high court has applied that principle in an analogous juvenile wardship setting to hold that even if a tardy order denying rehearing was "beyond the court's power [(rehearing being required as a matter of law)], this invalidity did not impair the order's appealability." (*In re Edgar M.* (1975) 14 Cal.3d 727, 740 [122 Cal.Rptr. 574, 537 P.2d 406].) The June 1999 removal order, being part of the disposition, was appealable (§ 395). Father cites rule 39.1(f), under which a matter heard by "a referee who was not sitting as a temporary judge" is appealable "within 60 days after the order becomes final under rule 1417(c)." He insists that the order, not being countersigned, was never "final," but we see no approval requirement in the rules. The referenced rule 1417(c) provides, "An order of a referee shall become final 10 calendar days after service of a copy of the order and findings . . . , if an application for rehearing has not been made within that time or if the judge of the juvenile court has not within the 10 days ordered a rehearing on the judge's own motion . . . ." There was no application for, or sua sponte grant of, a rehearing in this case, and father personally attended the disposition hearing, the minutes of which reflect that written copies of the order were served at that hearing. The rules provide that judge approval should occur "within two court days" of a referee's order (rule 1417(b)), but approval plays no apparent role in rendering the order *final* for appeal purposes. (See also *In re Clifford C., supra,* 15 Cal.4th at p. 1094 ["We cannot construe rule 1417(c) to encompass orders requiring the approval of a juvenile court judge in order to become effective. To do so would be inconsistent with the governing statutory framework, which clearly excludes such orders from the scope of section 250 [other orders immediately effective]."]) Father's cited authority (*In re Markaus V.* (1989) 211 Cal.App.3d 1331, 1336-1337 [260 Cal.Rptr. 126] [usual rule that oral rendition of order starts the 60 days running did not apply where a statute contemplated issuance of written order for filing in a dissolution action]) is factually inapt.

 Father's challenge to the lack of countersigning of the June 1999 removal order is accordingly barred by the waiver rule. His failure to make the challenge on direct appeal from the now final June 1999 order forecloses raising it now, on appeal from an order at a .26 hearing held over 18 months later.

 Anticipating this outcome, he requests that we treat his briefing as an application for writ of habeas corpus. We deny the request. First, purporting to conduct writ review outside the usual procedural and substantive safeguards governing writ review poses serious questions, making a separate and proper application by petition far preferable. (*Adoption of Alexander S.*

(1988) 44 Cal.3d 857, 865-866 [245 Cal.Rptr. 1, 750 P.2d 778].) Second, father relies on cases involving not habeas corpus, but writ of mandate, all in situations where mandate was, or perhaps might have been, the only permitted vehicle for review (*In re Rebecca H.* (1991) 227 Cal.App.3d 825, 836-837 [278 Cal.Rptr. 185] [referral order]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1771 [8 Cal.Rptr.2d 416] [same]; see *In re Paul E.* (1995) 39 Cal.App.4th 996, 1000, fn. 3 [46 Cal.Rptr.2d 289] [dictum that writ review would be appropriate if a dispositional order on a supplemental petition were not directly appealable].) Third, while habeas corpus may lie to collaterally attack an order or judgment that is void for lack of jurisdiction (e.g., *In re Mark L., supra,* 34 Cal.3d at p. 176 [sought by ward claiming illegal restraint]), we have already determined that the order here was not void. Fourth, to the extent that father hints at ineffective assistance by intimating in a footnote that his trial counsel acted incompetently by not detecting the failure to comply with section 249, an appropriate petition for such relief would have to be filed concurrently with an appeal from the effected order, or otherwise before the order became final. (*In re Carrie M.* (2001) 90 Cal.App.4th 530, 533-534 [108 Cal.Rptr.2d 856].) The June 1999 removal order was final years ago.

## DISPOSITION

The appeal is dismissed, and father's request to treat his briefing as a petition for writ of habeas corpus is denied.

Kline, P. J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 2002.