Filed 1/3/23 In re K.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re K.F., a Person Coming Under the Juvenile Court Law. | C096493 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.M., <br><br> Defendant and Appellant. | (Super. Ct. No. JV2019365) |

Appellant R.M. (father), the father of the minor K.F., appeals from the May 2022 order of the juvenile court terminating his parental rights. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Appellant asks this court to consider issues relating to the May 2020

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

jurisdictional and dispositional hearings, as well as the December 2020 status review hearing at which the section 366.26 hearing was set. We conclude appellant may not raise issues going back to those hearings. We affirm.

BACKGROUND

I

*Initial Dependency Proceedings*

At the time of the minor's birth in November 2019, the Yolo County Health and Human Services Agency (Agency) received a report that the mother, M.F. (mother), tested positive for methamphetamine, marijuana, and an untreated communicable disease. The minor was transferred to the neonatal intensive care unit (NICU) and had to be placed on a feeding tube. Mother disclosed that she had used methamphetamine during her pregnancy, with the last use occurring two or three days prior to the minor's preterm birth. Mother also reported a substance abuse history dating back to 2015.

On December 2, 2019, the Agency filed a juvenile dependency petition alleging that the minor came within section 300, subdivision (b), due to prenatal exposure to methamphetamine and marijuana, as well as mother's lack of prenatal care and history of substance abuse. The petition further alleged that the minor was at risk of abuse under section 300, subdivision (j), due to the January 2015 removal of the minor's sibling, due to prenatal drug exposure and mother's subsequent failure to engage in family reunification services.

On December 3, 2019, the juvenile court detained the minor from the care of mother, and father was named an alleged father.

II

*Jurisdiction and Disposition*

On January 8, 2020, the juvenile court held the initial jurisdiction hearing. The court ordered paternity testing for two alleged fathers and continued the matter for a combined jurisdiction/disposition hearing.

On January 31, 2020, the Agency filed its disposition report. At the time of the report, paternity testing results were pending. The social worker had been unable to conduct a social history with father because he missed scheduled appointments and had not responded to the social worker's attempts at contact. The disposition report recommended that mother be bypassed for reunification services under section 361.5, subdivision (b)(10) and (11). The Agency expressed concern regarding father's ability to safely parent the minor, citing his criminal history, failure to cooperate in a past child welfare investigation, and substance abuse history.

After the disposition report was filed, paternity testing results determined that father was the minor's biological father. On February 25, 2020, the Agency filed an addendum to the disposition report. Father completed a social history with the social worker and disclosed that he was currently not working but had stable housing living with family. Father disclosed that he served three years in prison following his arrest for selling illegal substances and having gang affiliation. He reported completing a drug rehabilitation program following a 2013 arrest for driving under the influence. Father acknowledged prior methamphetamine use but stated that he had not used methamphetamine since 2013. He reported that he was seeing a therapist regarding his anxiety. The Agency referred father for a mental health evaluation, substance abuse assessment, and drug testing. The Agency reported that father did not provide a drug test specimen as requested and failed to respond to the social worker's attempt to contact him to schedule visitation with the minor.

The Agency recommended reunification services for father based on his substance abuse and criminal history, gang association, continued use of alcohol and marijuana, failure to engage in a previous child welfare investigation for his other children in July of 2019, failure to remain in contact with the Agency during the minor's case, and failure to engage in visitation with the minor. The Agency assessed that these factors placed the minor at significant risk should she be placed in the care of father without additional

3

assessment and supportive services. Father was subsequently elevated to presumed father, and the Agency was granted authority to assess father for supervised and unsupervised visitation, overnight visits, and placement.

On March 20, 2020, the Agency filed a second addendum to the disposition report, again recommending bypass as to mother and reunification services as to father. Father had failed to complete any substance abuse or mental health assessment. Father failed to submit tests as requested on three occasions but did submit to several drug tests, which were positive for alcohol with levels exceeding the testing limitations, and for marijuana. The Agency also spoke with the mother of father's two other children, who expressed concern about father's alcohol use when the children were in his care. Father failed to provide information on the other adults living with him so that the Agency could conduct a background check. Father had not visited with the minor by the time the report was prepared, despite numerous attempts by the Agency to schedule such visitation.

On May 15, 2020, at the contested combined jurisdiction and disposition hearing, the juvenile court sustained the allegations in the petition, found that father was a nonoffending parent, found that placement of the minor with father would be detrimental, and ordered that reunification services be provided to father. Father failed to appeal these orders.

### III

*Interim and Status Review*

On June 5, 2020, the Agency filed an interim review report, which reported that father had been nonresponsive to attempts to schedule visits between March and May, and he failed to respond to referrals for substance abuse and mental health assessments. Father then agreed to a video visit with the minor on June 3, 2020, but he failed to contact the social worker as agreed. The Agency recommended continued services. The juvenile court ordered that reunification services continue but advised father that his services would likely not be extended if he continued not to make progress.

4

On November 6, 2020, the Agency filed a six-month status review report. The Agency recommended ceasing reunification services as to father based on father's failure to engage in case plan services and visitation. On December 15, 2020, at the contested six-month review hearing, father objected to the Agency's recommendation but presented no evidence. The juvenile court terminated reunification services as to father and set a selection and implementation hearing under section 366.26. Father did not file a petition for an extraordinary writ following this order.

IV

*Section 366.26 Hearing*

Following additional proceedings regarding a relative's request for placement in a section 388 petition, the Agency filed a section 366.26 report recommending termination of parental rights with a permanent plan of adoption. The Agency filed multiple addendum reports detailing its compliance with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). On May 5, 2022, at the section 366.26 selection and implementation hearing, the juvenile court determined that the Agency made diligent efforts at its inquiry under the ICWA and the ICWA did not apply. Father objected to the recommendation to terminate his parental rights based on a lack of reasonable services. Father further stated, through counsel, that the juvenile court lacked sufficient evidence at the combined jurisdictional and dispositional hearing to make a finding of detriment regarding placing the minor in his care. The court determined that his objection was not a legally valid argument, noting that father had not filed a section 388 petition to resume reunification services and the time for challenging the termination of reunification services had passed. The court then terminated the parental rights as to both father and mother, and the court designated the caregivers as the prospective adoptive parents.

Father filed a timely notice of appeal from the section 366.26 selection and implementation hearing.

5

In this appeal from the termination of his parental rights, father contends that the juvenile court erred in failing to place the minor with him as the nonoffending noncustodial parent at the jurisdictional and dispositional hearing. The Agency responds that father is barred from raising these issues regarding disposition on appeal from the section 366.26 selection and implementation hearing. The Agency alternatively contends that the juvenile court did not err in denying father's request for placement at the combined jurisdictional and dispositional hearing because there was substantial evidence to support its finding of detriment. Because we agree that father is barred from raising this argument at this juncture, we need not reach the Agency's alternative argument.

Section 395 provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).) "This statute makes the dispositional order in a dependency proceeding the appealable 'judgment.' [Citation.] Therefore, all subsequent orders are directly appealable without limitation, except for post-1994 orders setting a .26 hearing when the circumstances specified in section 366.26, subdivision (*l*), exist. [Citations.] A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150 (*Meranda P.*); see also *In re Janee J.* (1999) 74 Cal.App.4th 198, 206 (*Janee J.*).) "The [waiver] rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355, quoting *Janee J.*, at p. 207.) Moreover, "[p]ermitting a parent to raise issues going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition." (*Janee J.*, at p. 207.)

Here, the juvenile court's May 15, 2020 order denying placement with father and ordering reunification services was directly appealable as an order after judgment. As in *Janee J.*, father neither appealed the dispositional order nor any order made between then and the section 366.26 hearing. (See *Janee J., supra*, 74 Cal.App.4th at p. 206.) "Nor did [he] petition for writ review, the exclusively prescribed vehicle for appellate review of an order setting a .26 hearing." (*Ibid.*) Despite his failure to appeal the dispositional order, father contends that the order, and the subsequent order terminating his parental rights, must be reversed.

In *Meranda P.*, the court rejected an argument similar to the one father makes here. There, the mother contended the order terminating her parental rights "was wrongly entered because it was the inevitable product of a collection of erroneous orders — detention, jurisdiction, disposition and review — that preceded it." (*Meranda P., supra*, 56 Cal.App.4th at p. 1146.) She contended she had been denied her right to counsel from the initial detention hearing until an 18-month review and that her counsel from that hearing forward had rendered ineffective assistance. (*Id.* at pp. 1150-1151.) Like father, the mother had not appealed from any of the orders preceding the section 366.26 hearing, nor did she petition for writ review of the order setting the section 366.26 hearing. (*Meranda P.*, at p. 1151.) The *Meranda P.* court weighed the interests, risks, and benefits at stake, and concluded that the waiver rule barred the mother's claims. (*Ibid.*) The court concluded that enforcing the rule did not violate the mother's due process rights "even though the issues raised involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (*Ibid.*)

Nevertheless, subsequent opinions have concluded the waiver rule will not be enforced if due process forbids it. (*Janee J., supra*, 74 Cal.App.4th at p. 208.) Due process precludes application of the waiver rule where a defect so fundamentally undermined the statutory scheme that the parent was denied its protections as a whole, such as where the parent lacked notice of the right to petition for review of the order

7

setting the section 366.26 hearing. (*Janee J.,* at pp. 208-209.) However, review even of a fundamental defect may be forfeited if, after receiving notice, the defect is not raised in the trial court, or no appeal is taken at the earliest opportunity. (*In re B.G.* (1974) 11 Cal.3d 679, 689; *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.) "[T]o fall outside the waiver rule, defects must go beyond mere errors that might have been held reversible had they been properly and timely reviewed." (*Janee J.,* at p. 209.)

Here, father has not shown a due process exception to the waiver rule. (E.g., *In re S.D.* (2002) 99 Cal.App.4th 1068, 1079; *In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1190; *Janee J., supra*, 74 Cal.App.4th at p. 208.) Indeed, he did not address the waiver rule in his opening brief and did not file a reply brief addressing the Agency's arguments. Further, the record does not indicate a plausible due process exception. Father was present and represented by counsel at the dispositional hearing. At no point has father contended his counsel failed to tell him of his right to appeal the resulting order. He has not claimed he suffered ineffective assistance of counsel. Father has never and does not now claim he was actually ignorant of his right to appeal. He does not claim he would have appealed if he had known of his right to do so. Finally, he never sought leave to file a late notice of appeal. It is not sufficient for father to simply assert the juvenile court erred in entering a prior appealable order after he failed to timely appeal from that order. We conclude father's claims are barred by the waiver rule and he may not belatedly raise issues relating to the jurisdictional and dispositional hearings on this appeal from the section 366.26 selection and implementation hearing.

8

## DISPOSITION

The orders of the juvenile court are affirmed.


/s/
BOULWARE EURIE, J.

We concur:


/s/
ROBIE, Acting P. J.


/s/
DUARTE, J.

9