Filed 6/10/26  In re V.V. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

| | |
|---|---|
| In re V.V. et al., Persons Coming Under the Juvenile Court Law. | C104575 |
| SISKIYOU COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>C.V.,<br>        Defendant and Appellant. | (Super. Ct. Nos. 23JV01101, 23JV01098, 23JV01099, 23JV01100, 23JV01103) |

Appellant, C.V. (father), appeals from the juvenile court's order terminating parental rights under Welfare and Institutions Code section 366.26.[1]  Father contends that the court erred in (1) denying his request to change a court order under section 388 based on "new" evidence; (2) denying his motion to continue the section 366.26 hearing; (3) precluding the presentation of new evidence in support of the beneficial parent-child relationship exception; and (4) finding that the exception did not apply.  We will affirm.

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Father is the biological father of V.V., Ch.V., M.V., H.V., and B.V. (collectively the minors). M.S. is the minors' half-sister from a different father and is not part of this appeal. The minors' mother is M.C. (mother) (collectively we refer to father and mother as the parents). Mother did not appeal the orders made at the 366.26 hearing and is not subject to this appeal.

On February 8, 2023, the Siskiyou County Health and Human Services Agency (Agency) filed an original petition under section 300, subdivision (b)(l) and (d). The petition alleged the minors suffered or were at substantial risk of suffering serious physical harm as a result of the parents' failure or inability to supervise or provide regular care to the minors. The petition further alleged the minors suffered sexual abuse or there was a substantial risk the minors would be sexually abused.

The petition alleged that the Yreka Police Department responded to a report of possible sexual abuse by father and physical abuse by mother. The minors denied that the parents physically disciplined them except for Ch.V., who stated that his parents hit him when he gets into trouble. Officers shared two videos with the Agency. One depicted mother yelling at, slapping, and grabbing the minors. The other showed mother throwing a cell phone at Ch.V. In February 2023, mother was arrested for assault (Pen. Code, § 245) and child endangerment (Pen. Code, § 273a, subd. (a)) based on the videos.

M.S. reported she was sexually abused by father, alleging he touched her chest, vagina, and buttocks. M.S. further reported she orally copulated father approximately 10 times and that father attempted to vaginally penetrate her when she was about 10 or 11 years old. She was unsure if penetration actually occurred but recalled that "it hurt." M.S. also stated that father told her it was "our secret" and that "they would go to jail if anyone found out."

In February 2023, M.S. further reported that father attempted to touch her again "very late at night" while the others were sleeping when the family was staying at a

motel. The petition further alleged that father made M.S. watch videos on his computer of "weird black model naked girls doing things to naked boys," which she clarified were adults. The minors reported "continuous fighting" between the parents that became physical, which scared them. According to a paternal relative, the parents often fought in front of the minors, both verbally and at times physically. The minors also stated they had never been to a doctor because father "does not like doctors." Mother obtained a temporary restraining order against father and left the motel. At the time, father was participating in a court-ordered mental health diversion program.

At the February 9, 2023, detention hearing, the juvenile court found the continuance of the minors in the home of the parents was contrary to their welfare, ordered the minors detained, and continued the matter for a jurisdictional hearing.

On March 30, 2023, the Agency filed a jurisdiction and disposition report that recommended the juvenile court find the allegations in the petition to be true, declare the minors dependents of the court, and offer reunification services to the parents.

On May 8, 2023, the court held a combined jurisdiction and disposition hearing. The court found adopting the report's recommended findings was in the best interests of the minors. It also found the allegations in the section 300 petition to be true by a preponderance of the evidence, declared the minors dependents of the court, ordered the parents to participate in reunification services, and continued the matter for a six-month review hearing.

On September 21, 2023, the Agency filed a six-month review report, which recommended that the minors remain in foster care and the parents continue to participate in reunification services. The report indicated that earlier in the month mother had been arrested for torture and child endangerment against the minors. The report also indicated that, prior to her arrest, mother had participated in parenting classes, anger management, a psychological evaluation, individual counseling, and had secured housing. Mother did not consistently submit to drug testing and had tested positive for alcohol and THC on

3

separate occasions. Father was also arrested for torture, child cruelty, and lewd and lascivious acts with a minor under 14. Before his arrest, he participated in individual counseling, mental health diversion court, and had a psychological evaluation. Father did not complete an anger management assessment, consistently participate in parenting classes, or comply with substance abuse services, testing positive for cannabis 11 times. At the six-month review hearing on October 2, 2023, the juvenile court continued reunification services and set the matter for a 12-month review hearing.

On March 15, 2024, the Agency filed a 12-month review report. The report recommended that the juvenile court terminate reunification services and set a hearing pursuant to section 366.26, to determine an appropriate permanent plan for the children. Both parents remained incarcerated. While incarcerated, mother obtained her high school diploma and completed services provided by the Agency. During father's incarceration he completed some services provided to him by the Agency and worked on an anger management workbook, but he continued to minimize his involvement in the removal of the minors. The minors did not visit with the parents due to their respective incarcerations.

On April 22, 2024, the juvenile court held a readiness conference. Father advised the court that he wanted to represent himself in the proceedings, upon which the juvenile court relieved father's counsel and set a contested 12-month review hearing. The court continued the case several times and held the contested 12-month review hearing on August 26, 2024. The court admitted the 12-month review report into evidence without objection. Father requested the court extend reunification services for another six months and examined Corina Long, a social worker from the Agency, about the report and reunification. The court found that because both parents were in custody there was not a substantial probability of the minors' return to the parents within 18 months of entering foster care and that reasonable services had been provided. The court found that the Agency established by a preponderance of the evidence that the return of the children to

4

their parents would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the children; terminated reunification services as to both parents; and set a section 366.26 hearing.

On September 3, 2024, father filed a "Notice of Intent to File a Writ Petition to Review Order Setting Hearing Under WIC § 366.26." On December 10, 2024, the Agency filed a memorandum with the juvenile court, requesting that the section 366.26 hearing be continued to June 9, 2025, to allow for additional permanency planning, which the juvenile court granted.

On February 7, 2025, the Agency filed a status review report, which indicated that both parents remained incarcerated, the minors expressed a desire to be adopted by their caregiver and recommended that the minors remain dependents of the juvenile court. The court held a status hearing on February 24, 2025, and adopted the recommended findings in the report.

On May 16, 2025, this court denied father's petition for extraordinary writ relief with request for stay. On May 29, 2025, the Agency filed a section 366.26 report that recommended terminating parental rights and selecting adoption as the minors' permanent plans. The parents remained incarcerated. The court held a contested section 366.26 hearing on June 9, 2025, and continued the hearing to June 30, 2025, due to pending hearings in the parents' respective criminal cases.

Prior to the hearing, father filed a declaration with attached information regarding the disadvantages of adoption and permanent separation of children from their biological fathers and a motion to continue the June 30, 2025, hearing.

On June 30, 2025, the same date as the contested section 366.26 hearing, father filed an opposition to the section 366.26 report's recommendation to terminate father's parental rights. He also filed a section 388 petition requesting the court grant a "rehearing or reconsideration of the Jurisdiction/Disposition report and orders," citing "new evidence" that had become available. In his petition, father stated the evidence was

5

"not previously considered by the court due to a combination of procedural barriers and ineffective assistance of counsel." Father claimed his attorney "did not submit this evidence at the dispositional hearing, despite it being available," and that he did not have access to the evidence while he was incarcerated, although he conceded that he "did have access to the [evidence] during the initial phases of the case."

The juvenile court denied father's request to continue the hearing, finding that it had been more than 10 months since services were removed, two and a half years since removal of the minors, and that the criminal case did not constitute good cause to continue the matter.

As to the section 388 petition, the court denied the petition, finding it was "not the proper procedure to go back in time, two years, and have another jurisdiction/disposition hearing. [¶] And even if we were to do so, I don't find that the evidence that you have submitted would have changed the findings and the orders that were made." Father stated he did not have anything else to submit aside from what was in his section 388 petition.

The juvenile court admitted the section 366.26 report into evidence. The court asked father if he had any witnesses he would like to call. Father then testified that there was a beneficial bond between him and the minors, he was the primary caregiver, and the minors loved him. He argued that when he was not incarcerated he attended every visit and did not miss a day of work. The paternal grandmother also testified that father was the primary caregiver for the minors, that father's relationship with the minors was beneficial to the minors, and that it would not benefit the minors if father was not in their lives. The Agency requested that the juvenile court adopt the proposed recommendations and findings in the section 366.26 report.

The juvenile court found there was clear and convincing evidence that the minors would be adopted, that the minors' current placements had indicated a desire to adopt the minors, and that reunification services were previously terminated. The court addressed

father's arguments regarding the beneficial relationship exception.  The court found regular visitation had not occurred in the approximately 18 months that father was incarcerated and when visitation did occur there were "significant issues," including one of the minors being injured.  It also found that the minors had "improved physically and emotionally since" being removed from the parents.  As such, the court found the benefit of placement in a new adoptive home outweighed the harm the minors could experience by a loss of a significant positive emotional relationship with father and terminated the parents' parental rights.

Father timely appealed the juvenile court's orders terminating parental rights.

## DISCUSSION

### I.
### *Section 388 Motion*

Father's section 388 motion sought a rehearing on "all issues addressed in the Jurisdiction/Disposition Findings and Orders filed on May 8, 2023."  The motion alleged new evidence had become available that was not considered at the jurisdiction/disposition hearing because his attorney failed to present it.  Father claims the juvenile court improperly denied his section 388 motion.  We disagree.

Section 388, subdivision (a) states in pertinent part:  "Any parent or other person having an interest in a child who is a dependent child of the juvenile court ... may, upon grounds of change of circumstance or *new evidence,* petition the court in the same action in which the child was found to be a dependent child of the juvenile court ... for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (Italics added.)  Subdivision (d) of section 388 states in pertinent part:  "If it appears that the best interests of the child … may be promoted by the proposed change of order, ... the court shall order that a hearing be held."

The statute does not define "new evidence," but case law does.  In *In re H.S.* (2010) 188 Cal.App.4th 103, 108-109, this court held that "the term 'new evidence' in

7

section 388 must be construed to include the three requirements of new evidence, reasonable diligence, and materiality found in section 657 and 1008 of the Code of Civil Procedure."

Here, the "new evidence" was screenshots of a video that father described as demonstrating that his "accuser" (presumably one of the minors in this case) made false accusations against him. Father conceded in the motion that the "new" information was not in fact *new* because it was available at the jurisdictional and dispositional hearing but not presented due to "ineffective assistance of counsel, denial of [his] right to self-representation, and administrative errors within the jail system." As father has not raised a claim here on appeal of either ineffective assistance of counsel or related to the trial court's denial of self-representation (which we note the trial court granted before the contested 12-month review hearing), we conclude this evidence does not constitute "new evidence" for purposes of section 388.

There is another wrinkle with father's section 388 motion. Dependency appeals are governed by section 395, which provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as from an order after judgment." "A consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.) "In other words, 'A challenge to the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 811.) The rule serves vital policy considerations of promoting finality and reasonable expedition, in a carefully balanced legislative scheme, and preventing late-stage 'sabotage of the process' through a parent's attacks on earlier orders. (*In re Janee J.* [(1999) 74 Cal.App.4th 198,] 207.)" (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.) Here, father could have appealed the jurisdiction and

8

dispositional orders from May of 2023, but he did not. He cannot now challenge them via the vehicle of section 388.

Father also contends that the trial court precluded him, "by way of interruption," from explaining the other evidence that he had wanted to present at the section 388 hearing. We do not so interpret that colloquy. As we view the record of the hearing, the trial court gave father the opportunity to explain what new evidence he had and any interruptions by the court were to try and get father to slow down his speech so that the court reporter could keep up with him. Once father had concluded, the trial court stated: "This is not the proper procedure to go back in time, two years, and have another jurisdiction/disposition hearing. [¶] And even if we were to do so, I don't find that the evidence that you have submitted would have changed the findings and the orders that were made in connection —," to which father then interrupted and stated, "I've got more evidence —," and the juvenile court responded, "No." We find the juvenile court gave father sufficient time to explain what new evidence he wanted to present, but the point of father's evidence was to revisit decisions made at the jurisdiction/disposition hearing held nearly two years earlier and, as we have indicated, to which the time to appeal had long passed. We find no abuse of discretion.

## II.
### *Motion to Continue*

Four days before the scheduled 366.26 hearing, father filed a motion to continue the hearing. He claimed that because he had been working on filing and preparing for hearings on multiple motions in his criminal case and had limited access to the law library at the jail where he was incarcerated, his ability to prepare for the permanency planning hearing, including filing a written opposition to the recommendation to terminate his parental rights, had been limited. Father contends the trial court improperly denied his motion to continue. We review the juvenile court's decision to deny a

9

continuance in a dependency case for abuse of discretion, a deferential standard. (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 637.)

Section 352 provides that the juvenile court may "continue any hearing" under the dependency law "beyond the time limit within which the hearing is otherwise required to be held" (§ 352, subd. (a)(1)), provided there is "good cause" (*id.*, subd. (a)(2)) and a continuance would not be "contrary to the interest of the minor" (*id.*, subd. (a)(1)).  In evaluating the minor's interest, the court "shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (*Ibid.*)

Here, the juvenile court found that it had been more than 10 months since services were terminated, two and a half years since removal of the minors, and that accommodating a criminal case did not constitute good cause to continue the matter.  The court did not abuse its discretion in denying the motion to continue.

We note that father began representing himself in this case when the juvenile court granted his request to do so on April 22, 2024.  The matter was then set for a contested 12-month review hearing, which finally occurred on August 26, 2024.  At the conclusion of the hearing, the juvenile court terminated reunification services as to both father and mother and set the matter for a section 366.26 selection and implementation hearing.  On May 29, 2025, the Agency filed its section 366.26 report, recommending that parental rights be terminated and adoption be selected as the permanent plan for the children.  Quite simply, we find father had sufficient time to prepare for the section 366.26 hearing and that he chose to prioritize his criminal matter over this case did not provide good cause to continue the hearing.

### III.
*Beneficial Relationship Exception*

Father claims that the juvenile court precluded presentation of new evidence, including photographs evidencing the minors' happiness in father's presence during visits

and newly obtained video clips from interviews with the minors. Father further claims the juvenile court erred in finding that the beneficial relationship exception did not apply.

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. … *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) One such circumstance is the so-called beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*).)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to the termination of parental rights. (*Caden C., supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) The parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent — the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, at p. 636.)

As discussed *ante*, we conclude that the juvenile court did not preclude father from submitting "new evidence" because much of what father wished to present did not constitute "new evidence." Even if the juvenile court had considered any evidence discussed by father, it indicated that would not have changed its findings. We agree.

11

Father contends that his devotion to his children, their enjoyment of visits with him, and the anguish he would feel if they were to be adopted, satisfy the beneficial parental relationship exception to adoption. We do not question father's love for his children or his desire to parent them. But as father notes, the focus of determining the importance of the parent-child relationship is on whether severing that relationship would have a detrimental impact on the *children* that outweighs the benefit of adoption. Here, the juvenile court found that the exception did not apply based on the evidence that father had not visited with the children since August of 2023, and the minors were thriving in their current placements with caretakers who were willing to adopt them. It is not enough for a parent to show loving contact during pleasant visits. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.) Interaction between a natural parent and child will almost always confer some benefit to the child. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) What the parent must establish for the beneficial parental relationship to adoption to apply is that a minor has such a significant, positive emotional attachment to the parent that the benefit of maintaining it outweighs the benefits a minor would obtain from adoption. (*Caden C., supra*, 11 Cal.5th at pp. 633-634.) The record here does not support that.

## DISPOSITION

The juvenile court's orders are affirmed.

/s/
EARL, P. J.

We concur:

/s/
MAURO, J.

/s/
MESIWALA, J.