Filed 6/14/24  In re M.N. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| In re M.N., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B332364 (Super. Ct. No. 22JV00222) (Santa Barbara County) |
| SANTA BARBARA COUNTY CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.N.,<br><br>    Defendant and Appellant. | |

A.N. (Father) appeals from the juvenile court's order terminating his parental rights to his infant daughter, M.N.

(Welf. & Inst. Code,[1] § 366.26).  He contends that the court erred in denying him presumed father status and that the section 366.26 report was inadequate.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

M.N. was born in July 2022.  Santa Barbara County Child Welfare Services (CWS) took protective custody over M.N. when she was four days old.  The amended juvenile petition alleged that B.R. (Mother)[2] used drugs during her pregnancy and that M.N.'s umbilical cord tested positive for drugs at birth.  It also alleged Father should have reasonably known of Mother's drug abuse and failed to protect M.N.  Additionally, the petition alleged that Father had a history of drug use and admitted recent drug use.  He also had an extensive criminal history.

At the detention hearing, Mother stated Father was M.N.'s father, there was no chance that anyone else could be the father, and that Father was present at the hospital for M.N.'s birth.  Mother said that Father did not sign M.N.'s birth certificate because he was at work when she filled out the paperwork.  Father also said he was M.N.'s father.  However, he declined a DNA paternity test because he was "confident that he [was] the father."  CWS requested the court defer paternity determinations until after it received the birth certificate.  Father requested that he be treated as a presumed father for the purposes of receiving visitation and services.

The court deferred the paternity determination and found that Father was the "alleged father" but "presumed father" for

_____

[1] Statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

2

the "purposes of visitation only." As to reunification services, the court found that he was not entitled to reunification services as an alleged father. The court ordered M.N. to remain detained and ordered supervised visitation.

At the combined jurisdiction/disposition hearing in August 2022, the juvenile court found the allegations in the petition true. Father, as an "alleged father," did not have standing regarding jurisdiction. He requested a paternity test and a paternity review hearing. The court granted Father's request. A dispositional order was filed on August 16, 2022.

At an interim paternity review hearing on October 4, 2022, CWS reported that Mother and Father were not in contact with the social worker. They could not be reached by phone and did not answer the door when the social worker went to their home. Most of Father's scheduled visits were no-shows or canceled due to "flu-like symptoms." Father had been receiving services for drug treatment, but he was discharged for noncompliance. He tested positive for methamphetamine about two weeks before the hearing. CWS also referred Father to parenting education and mental health assessment services, but he did not participate.

CWS requested that Father only be found as the "biological father" based on the paternity test results. If Father wanted to be elevated to "presumed father," he would need to submit a JV-505 petition—Statement Regarding Parentage. The court agreed and found Father to be the biological father. The court asked Father's counsel if he (or other counsel) would help him complete a JV-505 petition, and counsel responded, "Yes." CWS requested another review hearing so that it could assess Father for services and provide him with proper referrals. The court granted the request.

3

CWS filed an interim review report in which it recommended no reunification services for Father because they were not in M.N.'s best interest. Since the disposition hearing, Father missed most of his scheduled visits. CWS also referred Father to several other services, including parenting education, drug treatment, and mental health services, but he did not engage in any of them. Father was not in contact with social workers.

At Father's referral hearing on October 18, 2022, CWS argued that Father, as "biological father," was not entitled to services because they were not in M.N.'s best interest (§ 361.5, subd. (a)). It also asserted that Father would need to file a JV-180—Request to Change Court Order—to receive services. Father indicated that he would file a JV-180. The court followed CWS's recommendation and did not order reunification services for Father.

In its six-month review report, CWS recommended Mother's services be terminated and the court set a section 366.26 hearing. The juvenile court adopted CWS's recommendations and set a date for this hearing. The court advised Mother and Father that they had the right to contest the court's decision and that they must do so by writ.

In the section 366.26 report, CWS recommended Father and Mother's parental rights be terminated and that adoption be selected as the permanent plan. The report included a history of contacts between M.N. and her parents since March 16, 2023. It described one two-hour supervised visit in June 2023 which Father and Mother both attended. The report also noted that M.N. had been with her caregivers (paternal aunt and uncle)

4

since she was 12 days old and was thriving in their care. The caregivers wished to adopt M.N.

Father submitted his offer of proof stating his intent to offer evidence that the beneficial parent relationship exception applied. He noted the section 366.26 report only included visits from March 2023 to July 2023, and that he was incarcerated during April and May 2023. Father maintained that he consistently and regularly attended visits between August 2022 and October 2022.

At the August 2023 section 366.26 hearing, Father did not appear. He messaged his attorney to state that his preference was to "rest . . . the case." The court found notice was given to the parents and "they . . . failed to appear." The court deemed that it was "essentially an indication they're not contesting the Department's recommendation." The court found M.N. likely to be adopted and terminated Mother and Father's parental rights.

## DISCUSSION

### *Presumed father status*

"[P]resumed fathers possess far greater rights than alleged or biological fathers. [Citation.] Only a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services . . . . [Citation.] In contrast, the juvenile court 'may' order reunification services for a biological father if the court determines that the services will benefit the child." (*Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 596; § 361.5, subd. (a).)

Father contends the juvenile court erred when it found him to be only a "biological father," and not a "presumed father." He claims the court improperly delegated its paternity status determination to county counsel, resulting in the denial of

5

presumed father status and reunification services. CWS argues Father forfeited his arguments. We agree that Father forfeited his arguments.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted.) An "appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*Ibid.*) In dependency cases, "the discretion must be exercised with special care" because "these proceedings involve the well-being of children, [and] considerations such as permanency and stability are of paramount importance." (*Ibid.*) A "party is precluded from urging on appeal any point not raised in the trial court. [Citation.] Any other rule would ' " 'permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not.' " ' " (*In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412.)

We decline to excuse Father's forfeiture. He had the opportunity to request elevation to "presumed father" status by submitting a JV-505 petition but failed to do so. Father also had the opportunity to challenge the court's order denying his reunification services by filing a JV-180 to change the court's order. Father indicated he would file a JV-180, but the record does not reflect that he did so.

6

Father also did not seek timely review of the October 18, 2022, order in which the juvenile court denied reunification services. " ' "In a section 300 proceeding, the order entered at the dispositional hearing is a final judgment." ' " (*In re T.G.* (2010) 188 Cal.App.4th 687, 692.) "The waiver rule as applied in dependency cases flows from section 395, under which the dispositional order is an appealable judgment, and all subsequent orders are directly appealable without limitation except for post-1994 orders setting a .26 hearing, which are subject to writ review . . . and related limitations (§ 366.26, subd. (*l*))." (*In re Jesse W.* (2001) 93 Cal.App.4th 349, 355.) Unappealed disposition and postdisposition orders are "final and binding and may not be attacked on an appeal from a later appealable order." (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150-1151.) "The time for appeal of an order made in a dependency case is 60 days from the date of the order's pronouncement in open court." (*In re A.J.* (2022) 77 Cal.App.5th 7, 16.) Because the order denying reunification services to Father was a postdisposition order appealable under section 395, subdivision (a)(1), and Father did not timely appeal from that order, Father cannot belatedly challenge the denial of reunification services.

*Section 366.26 report adequacy*

Father contends CWS submitted an inadequate section 366.26 report because it "was largely silent" on his visits as required under *In re Caden C.* (2021) 11 Cal.5th 614, and the report only included visits after March 16, 2023 (the date the court set the section 366.26 hearing). CWS contends Father forfeited this argument because he did not object to the adequacy of the report. We again agree the claim was forfeited. (See *In re*

7

*Dakota S.* (2000) 85 Cal.App.4th 494, 502; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411-412.)

And in our view, any error did not result in a miscarriage of justice. (Cal. Const., art. VI, § 13; *In re Dakota S., supra,* 85 Cal.App.4th at pp. 502-503.) Father's offer of proof purported to show that he maintained regular and consistent visits from August 2022 through October 2022, brought gifts to the visits, and had a bond with M.N. that would be detrimental to terminate. But Father did not appear at the hearing to decide the sufficiency of his amended offer of proof. And according to CWS's previous reports, Father missed most of the scheduled visits between the disposition hearing and the interim review report. M.N., who was 13 months old at the section 366.26 hearing, lived essentially her entire life with her caregivers and was thriving. Under these circumstances, it is not reasonably probable Father would have obtained a more favorable result had the section 366.26 report included a more detailed summary of his visits.

DISPOSITION

The order terminating Father's parental rights is affirmed. <u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.          CODY, J.

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy County Counsel, for Plaintiff and Respondent.